429 P.2d 39

Phillip E. **ELLIS** and Carolyn B. Ellis,
Plaintiffs and Respondents,

v.

Mrs. Betty **GILBERT**, Defendant
and Appellant.

No. 10526.

Supreme Court of Utah.

June 7, 1967.

Hanson & Baldwin, Ernest F. Baldwin, Jr., Salt Lake City, for appellant.

Wilford A. Beesley, Salt Lake City, for respondents.

CROCKETT, Chief Justice.

This is an interlocutory appeal granted to review a ruling of the district court that the defendant in a personal injury action must answer in discovery procedure whether she is insured, and if so, the name of the insurer and the amount of coverage.

Phillip E. Ellis and his wife, Carolyn, sue to recover for injuries to Mrs. Ellis and for the death of their unborn child resulting from a collision between their car and that of defendant on February 12, 1965, just west of Roosevelt, Utah. The issues as to the cause of the accident and as to the resulting injuries are in dispute and are not of concern at this preliminary stage of the case.

The ruling here challenged is based on the discovery procedure authorized in our Rules of Civil Procedure.[1] Their purpose is to make procedure as simple and efficient as possible by eliminating any useless ritual, undue rigidities or technicalities which may have become engrafted in our law; and to remove elements of surprise or trickery so the parties and the court can determine the facts and resolve the issues as directly, fairly and expeditiously as possible. In accord with this is the beginning policy statement in Rule 1 (a) : that the rules "shall be liberally construed to secure the just, speedy, and inexpensive determination of every action."

The primary rule applicable to the question here presented is Rule 26(b), U.R.C.P. which provides:

* * * the deponent may be examined regarding any matter, not privileged, *which is relevant to the subject-matter involved* in the pending action * * *. *It is not ground for objection that the testimony will be inadmissible at the trial* if the testimony sought appears reasonably calculated to *lead to the discovery of admissible evidence.*

It will be noted from the emphasized language that there are two aspects of the discovery permitted by this rule. The latter one, which relates to "testimony" and provides that it is not objectionable because it would be "inadmissible at the trial," is not a restriction upon the former and broader inquiry allowed into "any matter * * * which is *relevant to the subject-matter*" of the action.

1. Interrogatories are authorized by Rule 33, U.R.C.P. within the scope provided for in Rule 26(b), U.R.C.P.

■ In considering what is the "subject matter" of a lawsuit we keep in mind that the ultimate objective of any lawsuit is a determination of the dispute between the parties; and that the earlier and easier this can be accomplished, with justice to both sides, the better for all concerned. Whatever helps to attain that objective is "relevant" to the lawsuit.

Any lawyer or judge who is confronted with the duty of dealing with a claim for personal injuries will surely agree that there are involved two main aspects of the problem: the first is whether there is liability; and the second, of equal or perhaps more importance, is what is the prospect of actually recovering damages. A candid and forthright approach to the disposition of such a case demands recognition of the fact that the parties are more concerned with what money might actually be recovered by the plaintiff, or saved by the defense, than they are with the mere obtaining of a paper judgment as to whether there is or is not liability. The recognition of these facts is undoubtedly the reason that our rule describes the scope of inquiry in the broader term: "the subject matter of the action," rather than the more limited one: the "issues" to be tried in the case.[2]

■ Cognate to the thought just expressed is the fact that among the proper purposes of the proceedings prior to trial is the exploration of the possibility of resolving the dispute without trial. It seems quite indisputable that the court and counsel should have the benefit of all of the material facts bearing upon both of the essential aspects of the total lawsuit just mentioned, so that there can be a more realistic and meaningful discussion concerning any prospect of settlement. This view also finds corroboration in another of our Rules, 16, which provides with respect to pre-trial procedure: " * * * the court may * * * direct the attorneys for the parties to appear before it for a conference to consider * * * (5) [s]uch other matters as may aid in the disposition of the action."

We here observe that neither in the order of the trial court, nor in this decision, is it postulated that information concerning insurance should be disclosed to the jury.[3] The reasons for this appear to be that because of their lack of professional training and experience in such matters the jurors might be motivated by improper considerations in resolving the issues. But this should not be true of the judge and the

2. Lucas v. District Court, 140 Colo. 510, 345 P.2d 1064; Johanek v. Aberle, 27 F.R.D. 272 (D.Mont.); Broadway & Ninety-Sixth St. Realty Co. v. Loew's Inc., 21 F.R.D. 347 (S.D.N.Y.); Rose et al. v. Bourne, Inc., 15 F.R.D. 362 (S.D. N.Y.).

3. That introduction of the question of insurance into the trial is held to be prejudicial error, see Balle v. Smith, 81 Utah 179, 17 P.2d 224; Saltas v. Affleck, 99 Utah 381, 105 P.2d 176; and cf. Robinson v. Hreinson, 17 Utah 2d 261, 409 P. 2d 121.

attorneys. They are presumably conditioned by education, training and experience to render service of a professional character under a discipline which should involve a high degree of integrity.

It is indeed true that the lawyer has an obligation to discharge his duties of this character in loyalty and fidelity to the interest of his client. But he also has over-arching responsibilities of the same nature to the court as one of its officers, and to the profession itself, in its duty to serve the public according to the ideal which is the purpose of all procedure: to seek the truth and to do justice. It runs contrary to this purpose and casts an unfavorable reflection upon the integrity of the court and the attorneys if they must treat such an essential aspect of the case as the existence of insurance as though it would corrupt the whole procedure if the lawyers and the court knew about it.[4]

We do not regard it as an insuperable objection to the discovery in question that it would violate the defendant's rights as an unwarranted intrusion into his private affairs. There are valid reasons why to inquire into insurance coverage is of a different character than to inquire into his other assets. Of perhaps minor importance, but worthy of noting, is the fact that insofar as defendant's other assets are concerned, plaintiff may have other means of knowing something about defendant's financial responsibility, whereas, insurance is but a special type of resource the defendant may possess, whose only value is to protect defendant's other assets and persons he might wrongfully injure.

Another important consideration is the fact that in passing the Safety Responsibility Act the legislature has indicated as a matter of public policy its recognition of the dangers, injury and destruction on our highways, from which the public has a right to some measure of protection.[5] When one is so injured, he becomes in effect a third-party beneficiary of the insurance of a wrongdoer who injures him.[6]

Such policies often have various covenants which are of concern to the injured plaintiff, e. g.: relating to voluntary medical coverage; that the insured must give notice of an accident; that he must extend cooperation to the company. It is only reasonable that the plaintiff should have some means of discovering whether a policy exists, and what its provisions are so he can know whether covenants upon which his rights may depend are being complied with. This is especially true since the plaintiff charges the defendant with carelessness in

4. See Ash v. Farwell, 37 F.R.D. 553 (D.C. Kan.).

5. See Secs. 41–12–1 et seq., U.C.A.1953.

6. Peterson v. Western Casualty & Surety Co., 19 Utah 2d 26, 425 P.2d 769; see Shapiro v. Republic Ind. Co. of America, 52 Cal.2d 437, 341 P.2d 289.

injuring him, and may suspect he would be careless about other duties.

There are further considerations which we regard as having some cogency and persuasiveness in support of the discovery. The court is concerned with the rights of the parties: the plaintiff and the defendant. The bare facts of life may as well be faced and reckoned with. If we look behind the facade it is to be seen that where there is insurance, the company actually takes over, employs counsel, investigates the case, interviews the witnesses, controls offers of settlement, and in fact, handles the entire matter. Thus the arguments against discovery concerning insurance are actually made by and for the benefit of the insurance company rather than of the insured. Whereas, from the standpoint of the defendant, in most cases there would be no reason why he would have any objection to allowing the discovery. In fact, it may prove advantageous to him, since the likelihood is that it would lessen his individual concern with the lawsuit, increase the possibility of settlement, and reduce the risk of a judgment in excess of the policy limits.

Finally, there are some very practical reasons why the refusal to disclose whether insurance exists seems like almost useless shadow boxing anyway. Due to the almost universal carrying of liability insurance on automobiles because of financial responsibility acts, there is very little likelihood that the court and lawyers will think otherwise than that the defendant is insured. Furthermore, our statute requires a person involved in an automobile accident to file proof of insurance or financial responsibility, or have his driver's license suspended.[7] This information can be obtained by the parties. Refusal to disclose serves the cause of neither efficiency nor fairness. It just adds to the difficulty and delay by forcing the plaintiff to resort to other sources than court procedure to get necessary information. However, fairness does suggest taking note of the fact that in actual practice some insurance companies and their attorneys willingly make such disclosure, while others decline to do so. The position taken by the trial court puts them all on equal footing and puts the control in the court where it belongs.

We are not unaware of the arguments against disclosure, but in weighing them against the various considerations hereinabove discussed in favor of disclosure we have concluded that the ruling of the trial court is correct in unmasking the truth, at least to the attorneys and to the court, so that the proceedings can be carried on with candor and honesty and without cunning and deception. This serves the desired objective of encouraging in-

7. See footnote 5, supra.

formed and enlightened procedure in accordance with the hereinabove stated purpose of our rules, "to secure the just, speedy, and inexpensive determination of every action." (All emphasis added.)

Affirmed. Costs to plaintiff (respondent).

TUCKETT and ELLETT, JJ., concur.

HENRIOD, Justice (dissenting).

I dissent.

The basis for this whole appeal is conceded to be to find out if there is insurance,—*and in what amount,*—for the purpose of horse-trading for a *settlement* before the question of liability ever has been determined by a court or jury. It simply is a polite form of extortion, directed against an insurer, that had only a contract to pay *if* the insured was proven to be a tortfeasor. This contingent indemnity never exists, nor is it the basis of a lawsuit against the insurer without establishment of liability on the part of the insured.

Too many cases have hit this court, where the jury's verdict *happened* to be exactly the principal sum of an insurance policy, to convince me that any litigant should get the verdict before the venire is impaneled, by the simple device of forcing divulgence of the amount of coverage on what I think is a strange argument to the effect that it will save the court's time by a forced settlement without determining responsibility.

I had the novel notion that courts served the litigants in a proper procedure under fair rules,—to determine what the evidence is and where if any, liability reposes. The insurance policy is not evidence to indicate speed, mental condition, the state of the weather, intoxication or *anything else* involved in an accident. If certain conditions point to liability which the arbiter of the facts finds,—then and only then is an insurer liable. To say it is responsible before the insured's liability has been established in the court where he was sued by his accuser, and the court makes the insured divulge *the amount* of coverage he has, *for the purpose of effecting a settlement,* just to accommodate the court's calendar, in my humble opinion is plain dead wrong and has no place in judicial procedure. Such procedure is sanctioned in the main opinion, embellished with collateral arguments that the plaintiff should know if the one he sues has means to pay *by way of settlement,* with the cloak and dagger threat of a verdict,—not based on the issues, but the ability of an insurer to pay.

The rule (26(b)) cited by the main opinion to justify its conclusion, does not, in my opinion, say what the main opinion says it says. I think the majority has to indulge in considerable fly-specking in its in-

terpretation of it. It specks out one phrase to the effect that "the deponent may be examined regarding any matter, not privileged, *which is relevant to the subject-matter involved* in the pending action." The opinion then leaves out half the rule and quotes the last part of the rule to the effect that *"It is not ground for objection that the testimony will be inadmissible at the trial* if the testimony sought appears reasonably calculated to *lead to the discovery of admissible evidence."* The guts of the rule is that it be used "to lead to the discovery of *admissible* evidence." There is not even a squirt in this case, on appeal, to water the proposition that the rule was invoked to gather *evidence,*—but was used only to discover the *amount* of coverage, —ostensibly to help the court,—but super-ostensibly to set the sights for a David Harum one-eyed horse deal.

When the main opinion snatches on to the pleasant phrase "relevant to the subject matter," it misses the whole letter and spirit of the rule and sattelites itself into space, not reality. The rule obviously is to procure evidence,—not to go fishing to catch a fish in order to bargain for a price at Fishermen's Wharf. The "subject matter" in the rule obviously means the issue of liability, not the likelihood of adequately being compensated, hope of settlement depending on ability to pay or anything else.

If the main opinion stands, there is absolutely no reason why a plaintiff, who might have a phony claim, could not require the author of the main opinion, or anyone else, to open up his safety deposit box and divulge how green it is. Even the Supreme Court has said something about the right of privacy. A man's contract is his own, whether it be with his lessor, banker, wife or insurance company.

The main opinion says that a candid and forthright approach requires that we recognize that people are more concerned about what money they can recover than a paper judgment. True, but so were the money-changers in the Temple more concerned with money than the Sermon on the Mount. That does not justify the courts in seeing that the money-changers have an advantage in the courts.

There are thousands of fake suits instituted in this country. I don't think this is one of them, but if you lay down a precedent that any tramp, for $17.00, can force a decent person to divulge his assets,—for the purpose of nudging him into a settlement of a possible cooked-up case, we and the courts are in trouble,—and in concluding so we have cooked the sweet rules of procedure into a bitter brew of "boil and bubble, toil and trouble."

In the case of Carman v. Fishel, 418 P. 2d 963 (Okl.1966), Mr. Justice Lavender answers all of the reasoning of the main opinion much more articulately than I, to

**196**

which opinion I respectfully invite the reader's examination, and to whose logic and good sense I subscribe.

CALLISTER, J., concurs in the dissenting opinion of HENRIOD, J.