Jesse L. BENSON, by and through his guardian ad litem Russell R. BENSON, Marvin S. Benson, and Russell R. Benson, Plaintiffs and Respondents,

v.

I.H.C. HOSPITALS, INC., dba LDS Hospital, Michael B. Madsen, M.D., Michael W. Twede, M.D., Kit D. Smith, M.D., and John Does 1 through 10, Defendants and Petitioners.

No. 930016.

Supreme Court of Utah.

Dec. 30, 1993.

Joel M. Allred, Kimberly Allred, Salt Lake City, for Bensons.

Brinton R. Burbidge, David J. Hardy, Salt Lake City, for LDS Hosp. and I.H.C. Hospitals.

Curtis J. Drake, Gary D. Stott, Nathan R. Hyde, Salt Lake City, for Dr. Michael B. Madsen.

HALL, Chief Justice:

Petitioners I.H.C. Hospitals, Inc., dba LDS Hospital, and Michael Madsen, M.D., bring this interlocutory appeal challenging the trial court's order compelling it to produce certain documents to plaintiffs Jesse, Russell, and Marvin Benson ("the Bensons"). We reverse and remand.

This is a malpractice action brought by the Bensons against LDS Hospital, obstetrician Michael Madsen, anesthesiologist Kit Smith, resident Michael Twede, and others stemming from the delivery of Jesse Benson in March 1990. The Bensons allege that LDS Hospital and its medical personnel provided negligent medical care and treatment to Jesse and his mother Marvin Benson and

that Jesse suffered severe injuries at birth as a result of that treatment.[1]

During discovery, LDS Hospital purportedly turned over to the Bensons all of the medical records pertaining to Marvin's labor and Jesse's delivery. However, it refused to answer several requests for production of documents sought by the Bensons and instead asserted various privileges. The Bensons moved to compel production of the requested documents, and a hearing was held on the motion. After the hearing, the trial court granted the motion to compel and ordered that LDS Hospital identify and turn over to the court for *in camera* inspection all documents for which it claimed a privilege. LDS Hospital complied with the order and submitted all such documents to the court.[2]

A partial review of the documents prompted the court to order that they all be turned over to the Bensons. LDS Hospital and Dr. Madsen filed an objection to the order and also requested a stay pending interlocutory appeal. The trial court overruled the objections, denied the stay, and required the documents to be turned over to the Bensons without further notice to the Hospital.

LDS Hospital and Dr. Madsen subsequently brought this interlocutory appeal, and the disputed documents were returned to the trial court. On appeal, petitioners claim that the trial court erred by ordering that the documents were discoverable and by turning them over to the Bensons in an improper manner.

It appears the trial court determined that the documents in question contained privileged information as well as nonprivileged information. The trial court ordered the documents to be discovered and delivered to the Bensons' attorney, apparently on the basis that the documents were "commingled." The order states that the hospital "has commingled information which should have been retained in strict compliance with the terms of the statutes that are designed to protect disclosures." The trial court seems to have further determined that because nonprivileged documents were commingled with privileged documents, petitioners were therefore claiming privileges for nonprivileged material. As a result, petitioners waived any protection afforded by the statutes.

■ The trial court's decision has no basis. The statutes under which petitioners assert privileges are silent as to how documents are to be retained, other than the requirement that documents be kept in strict confidentiality. And we know of no rule that supports the trial court's conclusion that retaining privileged and nonprivileged material together constitutes a waiver of any privilege.

It is therefore necessary to remand for the purpose of affording the trial court the opportunity to make the determination as to whether the documents in question are in fact privileged. On appeal, as well as at the trial court level, only bald assertions have been made—on the one side, that the documents are nonprivileged medical records and, on the other side, that the documents were compiled only for in-house review purposes and hence are privileged.

On remand, it will be incumbent upon counsel to establish the evidentiary basis necessary for the trial court to make its determination of the issue of privilege. That process will no doubt be enhanced by a review of and guidance from the relevant standards adopted in other jurisdictions, by industry, including the American Hospital Association, or others.

The court's ultimate determination of the issues presented will require interpretation of the statutes relied on by petitioners as affording the privilege claimed. For that reason, we offer the following analysis.

Petitioners contend that a number of documents for which the Bensons seek production are privileged and therefore not subject to discovery. The first category of documents

---

1. The complaint also alleges claims against LDS Hospital for emotional distress allegedly inflicted on Marvin and Russell Benson.

2. We note that the hospital specifically listed every document for which it claimed a privilege and also stated what privilege it sought for each document. *See Madsen v. United Television, Inc.,* 801 P.2d 912, 916 (Utah 1990) (requiring party asserting privilege to specifically state privileges claimed for all documents submitted for *in camera* review).

for which they claim privilege are those which they assert were prepared by or for a hospital review committee and are maintained by LDS Hospital as part of its internal review process. These documents include the following: (1) a single-page "critical care indicator," which was completed by a nurse present during Jesse's delivery, (2) the minutes of the Obstetrics/Gynecology Quality Care Committee ("QCC"), which reviewed the circumstances of the delivery, (3) QCC reports reviewing the circumstances of the delivery as well as other patients of Dr. Madsen dating back to 1986, (4) Dr. Madsen's credentials files, and (5) Dr. Madsen's Obstetrics/Gynecology department file.[3]

Petitioners argue that each of the documents in this category is privileged under both the statutorily created "care review" and "peer review" privileges. We address each of these privileges and the basis for their existence.

In asserting the care review privilege, petitioners rely on sections 26–25–1 and 26–25–3 of the Utah Code. Section 26–25–1 provides, "Any person, health facility, or other organization may . . . provide . . . information"[4] to an in-house staff committee for "study, with the purpose of reducing morbidity or mortality; or the evaluation and improvement of hospital and health care rendered by hospitals, health facilities, or health care providers."[5] This information includes interviews, reports, statements, memoranda, and "other data relating to the condition and treatment of any person."[6] Section 26–25–3 goes on to state:

> All information, including . . . interviews, reports, statements, memoranda, or other data furnished by reason of this chapter, and any findings or conclusions resulting from those studies are privileged communications and may not be used or received in

evidence in any legal proceeding of any kind or character.[7]

The purpose of these statutes is to improve medical care by allowing health-care personnel to reduce "morbidity or mortality" and to provide information to evaluate and improve "hospital and health care." Without the privilege, personnel might be reluctant to give such information, and the accuracy of the information and the effectiveness of the studies would diminish greatly. However, it is not clear whether these provisions were intended to apply to specific, individual patients and the specific care given them during or after an operation and, if so, to what kind of documents they should apply.

Petitioners also assert the peer review privilege pursuant to section 58–12–43(7), which states:

> A review undertaken by a hospital board, committee, department, medical staff, or professional organization of health care providers . . . for the purpose of evaluating any health care provider regarding (a) professional ethics, (b) medical competence, (c) moral turpitude, or (d) substance abuse, and all information, interviews, statements, documents, testimony prepared in anticipation of, preparation for, or as part of the review, and the results of the review, are confidential and are not subject to discovery, use, or receipt in evidence in any legal proceeding of any kind or character, except as required by this section.[8]

The aim of this statute is to allow a "hospital board, committee, department, medical staff, or professional organization of health care providers" to freely evaluate their colleagues' professional skills, ethics, and character "as part of [a] review." The policy behind the privilege is similar to that of the care review privilege: "to protect health care

---

3. We note that petitioners assert other privileges for a number of other documents. Specifically, they contend that memoranda prepared by LDS Hospital's Risk Management Department were prepared in anticipation of litigation and are therefore protected under the work product privilege. Additionally, petitioners contend that transcripts containing statements given to an attorney for LDS Hospital fall under the protection of the work product privilege as well as the attorney-client privilege.

4. Utah Code Ann. § 26–25–1(1).

5. Utah Code Ann. § 26–25–1(2)(h), (3)(a)–(b).

6. Utah Code Ann. § 26–25–1(1)(b)–(f).

7. Utah Code Ann. § 26–25–3.

8. Utah Code Ann. § 58–12–43(7).

providers who furnish information regarding the quality of health care rendered by any individual or facility, pursuant to such a review." [9]

■ These statutes present certain concerns. An obvious concern is whether section 26–25–3 privileges only documents *prepared specifically* to be submitted for review purposes or whether the privilege also includes documents that *might* or *could* be used in the review process. The statutes' rationale tends to favor only the former scenario. Otherwise, an argument could be advanced that all medical documents prepared by hospital personnel are created to improve health care rendered by a hospital, and therefore, the care review privilege would apply to all such documents. Likewise, there is danger in construing the peer review privilege too broadly. For that reason, it would appear that only material and information prepared *specifically* for submission to a peer review committee, that are part of peer review or result from peer review, are privileged pursuant to section 58–12–43(7).

■ Another concern is whether information privileged under section 26–25–3 is discoverable but not admissible at trial or, as petitioners argue, is not discoverable at all. Petitioners base their contention that documents privileged under the care review privilege are automatically not discoverable pursuant to Utah Rule of Civil Procedure 26(b)(1), which makes privileged documents immune from discovery.[10] However, the plain language of section 26–25–3 contemplates otherwise. Section 58–12–43(7) specifically states that documents falling under its protection are neither discoverable nor admissible in any legal proceeding. It thus follows that if the legislature had intended to preclude discovery of information entitled to the care review privilege, it would have used language similar to that used in section 58–12–43(7).

Finally, the Bensons express the concern that certain documents that should be in the medical record are missing. They allege that the hospital is labeling documents privileged that actually belong in the medical record. Therefore, it will also be necessary on remand for the trial court to determine what documents exist that should have been produced but were not. If indeed there are documents that should be in the medical record that are not found there, then the statutory privileges are being abused, and that information and those documents are discoverable. Because petitioners are asserting privileges, it is their burden to show that nothing is missing from the medical record. It is then incumbent upon the trial court to review all the documents at issue and to determine, consistent with this opinion, which documents are privileged and not subject to discovery and which are nonprivileged and therefore discoverable.

HOWE, Associate C.J., and STEWART and ZIMMERMAN, JJ., concur.

DURHAM, J., does not participate herein.

---

**9.** *Rees v. IHC, Inc.,* 808 P.2d 1069, 1078 (Utah 1991).

**10.** Rule 26(b)(1) states in relevant part:

Parties may obtain discovery regarding any matter, *not privileged,* which is relevant to the subject matter involved in the pending action. Utah R.Civ.P. 26(b)(1) (emphasis added).