**SALT LAKE LEGAL DEFENDER ASSOCIATION, Petitioner,**

v.

**The Honorable Raymond UNO, Third District Judge, Respondent.**

No. 960419

Supreme Court of Utah.

Jan. 31, 1997.

Richard P. Mauro, Linda M. Jones, Salt Lake City, for petitioner.

Brent M. Johnson, Salt Lake City, for Judge Uno.

Jan Graham, Atty. Gen., J. Frederic Voros, Jr., David E. Yocom, Asst. Attys. Gen., Salt Lake City, for Warden Galetka.

Mary C. Corporon, Alan L. Sullivan, Matthew M. Durham, Todd M. Shaughnessy, Salt Lake City, for Ralph Leroy Menzies.

Frances M. Palacios, Brooke C. Wells, Salt Lake City, for themselves.

DURHAM, Justice:

Salt Lake Legal Defender Association (LDA) has petitioned this court for an extraordinary writ to review the trial court's denial of its request for a protective order regarding discovery in the case of *Menzies v. Galetka,* No. 950902713HC (3d Dist.Ct.Utah Sept. 16, 1996). In that case, Menzies (who was convicted of capital homicide in 1988) has asked for postconviction relief, claiming ineffective assistance of trial counsel—lawyers employed by LDA. Galetka served a subpoena duces tecum on LDA requesting documents and files in its possession relating to the trial. LDA asserted the work product immunity doctrine and requested a protective order pursuant to rule 26 of the Utah Rules of Civil Procedure, which the trial court refused. The question before us is two-fold: (1) Does the work product doctrine apply to any of the documents requested? (2) If so, what procedures should the trial court use to ensure its proper application?

Rule 26(b)(3) of the Utah Rules of Civil Procedure provides in part:

[A] party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation . . . only upon a showing that the party seeking discovery has substantial need of the materials . . .

and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney ... concerning the litigation.

The rationale for the protection of attorney work product was articulated by the United States Supreme Court, interpreting the similar federal rule, in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947):

In performing his various duties ... it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper presentation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.

*Id.* at 510–11, 67 S.Ct. at 393–94.

Unlike the attorney-client privilege, which belongs to the client and therefore may be unilaterally waived by the client, the work product doctrine has consistently recognized the interests of both the client and the attorney. The majority rule is that both may assert work product immunity. Jeff A. Anderson et al., Special Project, *The Work Product Doctrine*, 68 Cornell L. Rev. 760, 872–73 (1983). Such immunity, however, is not absolute. Some courts have emphasized that it exists to protect the integrity of the adversary process. "From its inception, ... the courts have stressed that the privilege is 'not to protect any interest of the attorney, who is no more entitled to privacy or protection than any other person, but to protect the adversary trial process itself.'" *Moody v. IRS*, 654 F.2d 795, 800 (D.C.Cir.1981) (quoting *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 864 (D.C.Cir.1980)). Others have focused on the professional interests of lawyers, which in turn benefit their clients. "The thrust of [*Hickman*] was the qualified protection of the professional effort, confidentiality and activity of an attorney, which transcends the rights of the litigants." *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480, 483 (4th Cir.1973). Virtually all have agreed, however, that it may be asserted independently by the attorneys who created the work product and that it does not belong exclusively to the client.

The dual dimensions of the policy underlying work product immunity—preserving the adversary system by providing attorneys with a zone of privacy permitting effective client advocacy—are presented in a novel posture by this case. In the ordinary case where an attorney's professional behavior is challenged by the client, usually in a legal malpractice suit, an exception to immunity has been found. "While Rule 26(b)(3) provides that protection against discovery of the attorney's or representative's 'mental impressions, conclusions, opinions, or legal theories' shall be provided, such protections would not screen information directly at issue." 4 James Wm. Moore, *Moore's Federal Practice*, § 26.64 [3.–2], at 26–315 (2d ed.1993). In addition to legal malpractice cases brought by clients, the "at issue" exception has generally been noted in cases where clients defending against government prosecution have relied on an "advice of counsel" defense and the government has been permitted to discover attorney work product related to the defense. These cases are not entirely analogous to the instant case for several reasons. In the malpractice case, reliance on work product immunity would directly undermine the client's interest, contrary to the policy that justifies the immunity in the first place. In the "advice of counsel" cases, it is precisely the process of preparing and creating the work product that is at issue. There is a sense in which the mental impressions, conclusions, and opinions constitute "the facts" of the case and therefore may be discoverable. In this case, however, there is no adversary relationship between the client and counsel. It is not the client seeking access to the files—it is the client's adversary, the State. Furthermore, at issue

is the performance of counsel during preparation and trial, not solely counsel's internal processes in compiling the file. Finally, ineffective assistance of counsel is in significant part a question of behavior observable from the record and ascertainable from counsel's testimony. The contents of counsel's files may or may not have a bearing on the specific claims of ineffectiveness made in this case.

A further consideration militates against a broad exception to rule 26 immunity in this case. The underlying litigation represents an extremely sensitive relationship—that between a capital defendant and his lawyers. The level of reliance, trust, and open communication in such a relationship must necessarily be very high. A good defense lawyer in a capital case should be privy to a vast amount of information about the defendant and the crime, much of which will find its way into the files. A discovery policy that creates a significant likelihood that such files will be opened in subsequent proceedings to the State, and thus to the prosecution, would dramatically impair the trial preparation process. There is simply no way to protect against improper use of information damaging to the client that might be available in the files.

We conclude, as a result of the foregoing considerations, that the "at issue" exception to rule 26 immunity cannot be applied across the board to LDA's files in Menzies' case. However, we acknowledge that there may be materials in the files that do not qualify for work product immunity, and there may even be specific materials within the scope of immunity that do qualify for the "at issue" exception and would not require the disclosure of sensitive information damaging to Menzies. For example, specific claims regarding counsel's performance made by Menzies or testified to by counsel may be corroborated or disputed by the contents of certain documents, from which any extraneous information could be redacted.

Under rule 26, the State is required to show, for all materials for which it seeks production, that it has "substantial need" and that it cannot, without "undue hardship," obtain the substantial equivalent of the information by other means. It has not yet done so. Disclosure may therefore be required in this case only if (1) the first two requirements of the rule are met for each document sought; (2) the "at issue" exception is directly applicable to a specific document; and (3) the document is edited to prevent the disclosure of any information not related to the ineffectiveness claims. These requirements will necessitate the preparation by LDA of an index of the documents in its file sufficient to allow the State to attempt to meet its burden under the rule. The trial judge will have to conduct an in camera review of each document to which the State is able to demonstrate its preliminary entitlement to ensure that it does not contain extraneous information that should not be revealed to the State. This process should ensure that the State has access to information, necessary and otherwise unobtainable, relevant to Menzies' claims of ineffective assistance of counsel. At the same time, it should preserve to the maximum extent possible the integrity of attorney work product necessary in criminal cases and protect criminal defendants from prejudicial disclosures not relevant to ineffectiveness claims.

We therefore grant the relief prayed for by petitioner. We direct the trial court to vacate its order of production and to supervise the discovery of materials in LDA's files in accordance with the standards set forth herein.

ZIMMERMAN, C.J., and RUSSON, J., concur.

HOWE, J., concurs in the result.

Having disqualified himself, STEWART, Associate C.J., does not participate herein.