2005 UT App 352

Katheryn CANNON, as surviving spouse of Gary R. Cannon, deceased; and Lane Cannon and Roland Cannon, as surviving children and legal heirs of Gary R. Cannon, deceased, Plaintiffs and Appellants,

v.

SALT LAKE REGIONAL MEDICAL CENTER, INC.; John and Jane Does I through X; and Doe Business Entities I through V, Defendants and Appellees.

No. 20040486–CA.

Court of Appeals of Utah.

Aug. 25, 2005.

Douglas G. Mortensen, Matheson Mortensen Olsen Jeppson PC, Salt Lake City, for Appellants.

David W. Slagle, Elizabeth L. Willey, and Bradley R. Blackham, Snow Christensen & Martineau, Salt Lake City, for Appellees.

Before Judges BILLINGS,[1] BENCH, and ORME.

OPINION

ORME, Judge:

¶ 1 This is an interlocutory appeal from the denial of Katheryn, Lane, and Roland Cannon's (collectively, "the Cannons") motion to compel the discovery of any "unusual occurrence reports" or "incident reports," (collectively, "incident reports") in the possession of Salt Lake Regional Medical Center, Inc., (the Hospital) relating to the treatment and care of Gary R. Cannon. The trial court determined that the Hospital's incident reports related to this matter are privileged and, therefore, not discoverable under the "care review" provisions of Utah Code sections 26–25–1 and 26–25–3. *See* Utah Code Ann. §§ 26–25–1, –3 (1998).[2] We reverse and remand.

BACKGROUND [3]

¶ 2 The Cannons brought the present lawsuit seeking damages arising out of the Hospital's care of Gary R. Cannon and his subsequent death. The Cannons allege that the Hospital provided negligent medical care to Mr. Cannon during his stay at the Hospital from May 16 through May 21, 2001. Specifically, the Cannons allege that on May 18, 2001, Mr. Cannon suffered a subdural hematoma when he fell in his hospital room. Three days later, Mr. Cannon died.

¶ 3 In their first set of requests for production of documents, the Cannons included a request for any incident reports created in connection with Mr. Cannon's fall and subsequent treatment. The Hospital objected to the Cannons' request for any existing incident reports on the ground that its incident reports are privileged and, therefore, not discoverable under Utah Code sections 26–25–1 and 26–25–3. *See* Utah Code Ann.

---

1. Judge Billings, having heard the arguments but having thereafter recused herself, does not participate in the court's decision.

2. While a few minor changes have been made to section 26–25–1 since 2001, *see* Utah Code Ann. § 26–25–1 (Supp.2004), we cite to the 1998 version of section 26–25–1, as it was the version in effect when the events that gave rise to this lawsuit occurred. Section 26–25–3, on the other hand, has not been amended since 1996. *See id.* § 26–25–3 (1998) (amendment notes).

3. Because this case comes to us on an interlocutory appeal during the discovery phase of the underlying litigation, the trial court has made no specific findings of fact regarding the circumstances that gave rise to the allegations of medical malpractice. As a result, our recitation of the relevant facts is based solely on the allegations and representations of both sides in their pleadings and briefs.

§§ 26-25-1, -3 (1998). The Cannons then filed a motion to compel the production of any incident reports tied to Mr. Cannon's alleged fall at the Hospital.

¶ 4 The Hospital opposed the motion to compel by again invoking the protection of the "care review" privilege available under sections 26-25-1 and 26-25-3. The Hospital supported its claim that its incident reports are privileged with the affidavit of Linda Wright, Risk Manager in the Quality Assurance Department at the Hospital. The trial court heard arguments and denied the Cannons' motion to compel. The trial court concluded that, based on the affidavit of Linda Wright, and absent any evidence to the contrary, the incident reports are privileged.[4]

¶ 5 The Cannons petitioned the Utah Supreme Court to permit an interlocutory appeal from the trial court's order denying their motion to compel. Pursuant to statute, the Supreme Court transferred the petition to this court. *See* Utah Code Ann. § 78-2-2(4) (2002). We granted the Cannons permission to appeal the interlocutory order.

## ISSUE AND STANDARDS OF REVIEW

¶ 6 We must determine whether the trial court properly denied the Cannons' motion to compel, which turns on its conclusion that the incident reports they seek are protected from discovery under sections 26-25-1 and 26-25-3. No other issue is properly before us on this interlocutory appeal.[5]

¶ 7 The trial court's decision to deny the Cannons' motion to compel is reviewed under an abuse of discretion standard. *See Pack v. Case*, 2001 UT App 232, ¶ 16, 30 P.3d 436, *cert. denied*, 40 P.3d 1135 (Utah 2001). Thus, "the trial court is granted broad latitude in handling discovery matters," *R & R Energies v. Mother Earth Indus., Inc.*, 936 P.2d 1068, 1079 (Utah 1997), and we "will not find abuse of discretion absent an erroneous conclusion of law or where there is no evidentiary basis for the trial court's ruling." *Askew v. Hardman*, 918 P.2d 469, 472 (Utah 1996). However, the trial court's conclusion that the incident reports are not subject to discovery because of a statutory privilege presents a question of law, which we review for correctness. *See State v. Gomez*, 2002 UT 120, ¶ 11, 63 P.3d 72 (reviewing trial court's interpretation and application of privilege afforded to victims of sexual assault as a question of law).

## ANALYSIS

¶ 8 The Utah Supreme Court has stated that the general purpose of discovery is "to remove elements of surprise or trickery so the parties and the court can deter-

4. Oddly enough, the night before Mr. Cannon's alleged fall, another patient at the Hospital fell in his room, suffered a subdural hematoma, and also subsequently died. A lawsuit followed, in which another of our trial courts ordered that the incident reports relating to that occurrence be produced. The Hospital apparently complied and did not seek an interlocutory appeal of that determination. Thus, trial courts have approached this same question and reached opposite conclusions about whether incident reports are protected from discovery under sections 26-25-1 and 26-25-3. *See* Utah Code Ann. §§ 26-25-1, -3 (1998).

5. In their reply brief, the Cannons try to sneak a few additional issues in for resolution by this court pertaining to ongoing discovery in the underlying matter, issues that the trial court has either ruled upon or that are still pending before the trial court. The Cannons suggest that this court is in the best position to assure compliance with any discovery issues that have occurred subsequent to the trial court's order that is the subject of this appeal. We have already once denied the Cannons' petition asking us to allow them to conclude discovery pertaining to the issue on appeal by ordering the Hospital to cooperate in such discovery and by directing the trial court to compel and oversee compliance with such discovery. We likewise refuse to delve into any other discovery issues that have occurred subsequent to the filing of this interlocutory appeal, as they are not properly before this court.

We also note that the Cannons argue in their reply brief that federal legislation known as HIPAA, the Health Insurance Portability and Accountability Act of 1996, Pub.L. No. 104-191, 110 Stat.1936 (codified, as amended, in scattered sections of 18, 26, 29, and 42 U.S.C.), applies and preempts any possible interpretation that 26-25-1 and 26-25-3 protect the incident reports from discovery. While the argument raises a significant issue, we do not consider arguments raised for the first time on appeal that have not been properly preserved or raised below. *See Coleman v. Stevens*, 2000 UT 98, ¶ 9, 17 P.3d 1122 (refusing to "consider matters raised for the first time in the reply brief").

mine the facts and resolve the issues as directly, fairly and expeditiously as possible." *Ellis v. Gilbert*, 19 Utah 2d 189, 429 P.2d 39, 40 (1967). It has also indicated that the purpose of the rules of civil procedure pertaining to discovery "is to make procedure as simple and efficient as possible by eliminating any useless ritual, undue rigidities or technicalities which may have become engrafted in our law." *Id.* As a result, we construe statutes and rules concerning discovery liberally, in favor of permitting discovery.

¶ 9 In spite of the law's preference for liberal and open discovery, our law places several necessary limitations on discovery. *See, e.g., Salt Lake Legal Defender Ass'n v. Uno*, 932 P.2d 589 (Utah 1997) (attorney work product privilege); *Madsen v. United Television, Inc.*, 801 P.2d 912 (Utah 1990) (official confidence privilege and common law executive privilege); *State v. Gomez*, 2002 UT 120, 63 P.3d 72 (statutory privilege for sexual assault victims). The Hospital argues that the statutory "care review" privilege found in Utah Code sections 26–25–1 and 26–25–3 protects its incident reports from discovery by the Cannons.

¶ 10 Section 26–25–3 provides:

> All information, interviews, reports, statements, memoranda, or other data furnished by reason of this chapter, and any findings or conclusions resulting from those studies *are privileged communications* and *are not subject to discovery, use, or receipt in evidence in any legal proceeding of any kind or character.*

Utah Code Ann. § 26–25–3 (1998) (emphasis added). Section 26–25–3's broad protections extend to "[a]ny person, health facility, or other organization" that provides "(a) information . . .; (b) interviews; (c) reports; (d) statements; (e) memoranda; and (f) other data relating to the condition and treatment of any person." *Id.* § 26–25–1(1). The protections apply to any of the specific organizations, committees, societies, and associations identified in subsection (2) of section 26–25–1, *see id.* § 26–25–1(2)(a)–(h), for any of the specific purposes listed in subsection (3) of section 26–25–1. *See id.* § 26–25–1(3)(a)–(b).

¶ 11 The Hospital argues that its incident reports are protected under the care review privilege because incident reports, and the information they contain, are provided to its Quality Assurance Department, an "in-house staff committee," *id.* § 26–15–1(2)(h), and the reports are provided for "the purpose of reducing morbidity or mortality; or . . . [for] *the evaluation and improvement of hospital and health care rendered by hospitals, health facilities, or health care providers,*" as section 26–25–1 requires. *Id.* § 26–25–1(3)(a)–(b) (emphasis added).

¶ 12 In an effort to establish that the care review privilege applies to its incident reports, the Hospital provided the trial court with the affidavit of Linda Wright, Risk Manager in the Quality Assurance Department at the Hospital. In her affidavit, Ms. Wright declared that (1) the Quality Assurance Department is responsible for collecting and evaluating incident reports for the purpose of assessing, evaluating, and improving the quality of health care rendered to patients at the Hospital; (2) incident reports are created specifically for submission to the Quality Assurance Department; (3) the Quality Assurance Department requires staff at the Hospital to fill out incident reports for all unusual occurrences; (4) the Quality Assurance Department reviews all incident reports created for the specific purpose of evaluating and improving health care at the Hospital; (5) incident reports are necessary and critical to the care review work the Quality Assurance Department performs; (6) incident reports are not created or used for any purpose other than to evaluate and improve health care at the Hospital; and (7) incident reports are not included as part of a patient's medical records.

¶ 13 The trial court determined that, based on Ms. Wright's affidavit, and "[i]n the absence of any evidence to the contrary," the incident reports are privileged under the statute. The Cannons argue, however, that Ms. Wright's assertions in her affidavit alone are an inadequate basis for finding that the Hospital's incident reports fall under the care review privilege. They argue instead that, at the very least, the documents for which the Hospital claims the privilege should have

been submitted to the trial court for the court's in camera review. The Hospital, on the other hand, argues that Ms. Wright's uncontested affidavit establishes that its incident reports squarely fit within the statutory language and are, therefore, privileged under the care review provisions and "not subject to discovery, use, or receipt in evidence in any legal proceeding of any kind or character." *Id.* § 26–25–3. It argues that, despite the Cannons' claim to the contrary, Utah law does not require any corroborating evidence beyond Ms. Wright's affidavit, nor did the court err by not requesting additional corroborating evidence or by not conducting an in camera review of the reports.

¶ 14 The Utah Supreme Court has specifically addressed, or interpreted, the care review privilege in only one limited circumstance, *see Benson v. I.H.C. Hosps. Inc.,* 866 P.2d 537 (Utah 1993), but in doing so has provided some helpful guidance as to what is required to establish that the privilege applies to protect information from discovery. In *Benson,* a hospital argued that both the "care review privilege," as well as the "peer review privilege," barred the discovery of documents it claimed "were prepared by or for a hospital review committee and are . . . part of its internal review process." *Id.* at 539. The Court in *Benson* clarified exactly what types of documents fall under the purview of the privilege, answering the question whether the care review privilege applied only to "documents *prepared specifically* to be submitted for review purposes or whether the privilege also includes documents that *might* or *could* be used in the review process." *Id.* at 540 (emphasis in original). The Supreme Court concluded that the privilege should be limited to only those "documents *prepared specifically* to be submitted for review purposes." *Id.* (emphasis in original). The Court reasoned that "[o]therwise, an argument could be advanced that all medical documents prepared by hospital personnel are created to improve health care rendered by a hospital, and therefore, the care review privilege would apply to all such documents." *Id.*

¶ 15 Importantly, the Court also stated in *Benson* that, in order to determine the appli-cability of the privilege, it is "incumbent upon counsel to establish *the evidentiary basis* necessary for the trial court to make its determination of the issue of privilege." *Id.* at 538 (emphasis added). In fact, the Court in *Benson* noted that the evidentiary basis for determining whether the privilege applied in that case was lacking because "only bald assertions [had] been made . . . that the documents [were] nonprivileged medical records . . . [or] that the documents were compiled only for in-house review purposes and hence are privileged." *Id.* It therefore instructed "the trial court to review all the documents at issue to determine . . . which documents are privileged and not subject to discovery and which are nonprivileged and therefore discoverable." *Id.* at 540.

¶ 16 In a slightly different, but analogous, context, the Utah Supreme Court has likewise addressed a trial court's need for an adequate evidentiary basis upon which to premise a determination concerning the applicability of statutory or common law privileges when they are "asserted in opposition to a request for civil discovery." *Madsen v. United Television, Inc.,* 801 P.2d 912, 915 (Utah 1990). In *Madsen,* the Court was required to determine whether the "statutory 'official confidence' privilege" or the "common law executive privilege" protected city police department personnel and internal affairs files from discovery. *Id.* at 914. The parties in *Madsen* had "stipulated to the submission of the disputed materials to the trial court for an *in camera* review," but "the court declined to make the review," ordered oral argument on the matter, and ruled on the discoverability of the files thereafter. *Id.* at 914.

¶ 17 On interlocutory appeal, the Utah Supreme Court remanded the case to the trial court partly because the trial court had ruled on the privilege issue solely based on the arguments presented by each side as to why the privileges did or did not apply. *See id.* It specifically instructed the trial court to examine, in camera, the disputed materials for which the privilege was claimed. *See id.* at 917. The Court reasoned that when statutory or common law privileges are "asserted in opposition to a request for discovery," trial

courts "must make an independent determination of the extent to which the privilege applies to the materials sought to be discovered," which determination "is the result of the *ad hoc* balancing of: (a) the discoverant's interests in disclosure of the materials; and (b) the [information holder's] interests in their confidentiality." *Id.* at 915 (internal quotations and citation omitted). Moreover, the *Madsen* Court also stated that the party claiming a common law or statutory privilege must provide the trial court a " ' "specific designation and description" of each item of material for which the privilege is claimed, "as well as the precise and certain reasons" for preserving the confidentiality of each item.' " *Id.* at 916 (citations omitted). Consequently, trial courts " 'may properly reject a broad, nonparticularized claim of the privilege.' " *Id.* (citation omitted).

¶ 18 Thus, we draw from *Benson* that an adequate evidentiary basis must exist for determining whether the documents and the information they contain are *"prepared specifically* to be submitted for review purposes" or whether documents and information are only of a type that *"might* or *could* be used in the review process." *Benson,* 866 P.2d at 540 (emphasis in original). Likewise, the Court's approach in *Madsen* supports the proposition that a trial court should not base its determination on the applicability of a privilege to bar discovery solely on the assertions of each side, especially when the party asserting the privilege may not have provided a specific enough "designation and description" of what materials are actually privileged. *Madsen,* 801 P.2d at 916 (internal quotations and citation omitted). Embracing the lessons of *Benson* and *Madsen,* we conclude that, in the instant case, the evidentiary basis for determining whether the care review privilege applies is lacking.

¶ 19 We cannot agree that Ms. Wright's bald assertions qualify as "the evidentiary basis necessary for the trial court to make its determination of the issue of privilege." [6] *Benson,* 866 P.2d at 538. Thus, we cannot say, as a matter of law, with reference only to Ms. Wright's affidavit, that these incident reports are privileged under the care review privilege and, thus, are not subject to discovery.

¶ 20 The affidavit fails to indicate what, exactly, these incident reports contain. The affidavit itself does not sufficiently summarize the nature of the incident reports, i.e., what they are, what information they contain, how they are used, who exactly gets to see them, etc. The affidavit speaks in conclusory terms, carefully tracking the key elements of the statutory language and the requirements the Court set forth in *Benson,* rather than providing more descriptive, detailed, and helpful information about the reports for which the privilege is asserted. Thus, while Ms. Wright's affidavit was uncontroverted by the Cannons, we do not see how they realistically could have controverted her statements. To hold that the affidavit sets forth an adequate evidentiary basis for the care review privilege leaves the Hospital with a virtual monopoly on the information the trial court will be able to consider. Allowing the Hospital to label information as an "incident report" or an "unusual occurrence report," and then declare by affidavit that such reports are created and used only for the purpose of evaluating and improving health care at the Hospital, effectively leaves the determination of whether these reports should be produced for discovery up to the party who possesses them.

¶ 21 That having been said, we do believe that the affidavit establishes something of a prima facie showing that the privilege applies, which constrains us from simply reversing and ordering the trial court to grant the Cannons' motion to compel. Nevertheless, because the affidavit only suggests the

6. While it may very well be that the Hospital's incident reports will prove to be privileged under these statutes, we note that if the trial court concludes that the incident reports are not exempt from discovery under the care review privilege, the mere fact that incident reports might be discoverable does not automatically mean that the reports are admissible into evidence. Thus,

while the reports may lead to the discovery of admissible evidence, it does not necessarily follow that they are themselves admissible. *See* Utah R. Civ. P. 26(b)(1) ("It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.").

possibility that the privilege applies, the proper approach for the trial court is to review the incident reports in camera to determine whether the privilege indeed applies to these documents. There is simply no substitute for reviewing the reports themselves.[7] As a result, we remand to the trial court with instructions to conduct an in camera review of the incident reports in order to properly determine whether the information they contain qualifies for protection under the care review privilege.[8]

¶ 22 Certainly both sides to this dispute have important interests in either the discovery of the incident reports or the protection of the information contained therein. In fact, it is the parties' competing interests that necessitate that the trial court have a more solid evidentiary basis for determining whether the privilege should apply to the reports in this case. The Hospital has a legitimate interest in protecting incident reports under the care review privilege in order to ensure an open exchange of accurate information between personnel and administrators in order to improve the effectiveness of studies, evaluations, and any measures implemented to improve hospitals and the quality of the health care they provide. *See Benson*, 866 P.2d at 539. ("Without the privilege, personnel might be reluctant to give such information, and the accuracy of the information and the effectiveness of the studies would diminish greatly."). That interest is aligned with the very purpose behind the care review privilege "to improve medical care by allowing health-care personnel to reduce 'morbidity or mortality' and to provide information to evaluate and improve 'hospital and health care.' " *Id.* (quoting Utah Code Ann. § 26–25–1(3)(a)–(b)).

▮ ¶ 23 Nevertheless, the privilege was never intended to shield hospitals from potential liability or to provide hospitals protection from medical malpractice claims. Consequently, because there is obvious danger in construing the care review privilege too broadly, the privilege naturally has its limits. Moreover, the Cannons also have an important interest in the discovery of evidence, or information that will lead to evidence, that will support their claims. *See, e.g., Ellis v. Gilbert*, 19 Utah 2d 189, 429 P.2d 39, 40 (1967) (noting the important interest that both courts and litigants have in being able, through discovery, to "determine the facts and resolve the issues as directly, fairly and expeditiously as possible").

## CONCLUSION

¶ 24 We conclude that Ms. Wright's affidavit does not conclusively establish that the care review privilege applies to protect the

---

7. We can envision a narrow range of cases where it would be clear that an affidavit establishes, in and of itself, that the privilege applies, or, conversely, that it clearly fails to establish that the privilege applies. That narrow range of cases notwithstanding, trial courts should be more inclined to routinely look at these kinds of documents in order to make an informed decision about whether they fall within the scope of the statutory privilege.

8. The Hospital relies on a Massachusetts supreme court case to argue that an in camera review of incident reports should only be conducted as a "last resort," when other evidence such as affidavit testimony does not establish the privilege, because in camera review "necessarily involves an invasion and dilution of a statutory privilege." *Carr v. Howard*, 426 Mass. 514, 689 N.E.2d 1304, 1312–15 (1998). It also argues that the trial court in the instant case acted within its discretion in denying the Cannons' motion to compel without conducting an in camera review of the incident reports because trial courts in Utah are granted discretion to conduct an in camera review "where appropriate," but they are not required to do so. *Spratley v. State Farm Mut. Auto. Ins. Co.*, 2003 UT 39, ¶ 22, 78 P.3d 603. We are unpersuaded by these arguments because this case presents a situation where in camera review is necessary and "appropriate," given the fact that Ms. Wright's affidavit does not, in and of itself, establish that the privilege applies. Moreover, our own Supreme Court has recognized that a trial court's practice of conducting an in camera review of information or documents one party claims are protected by confidentiality or privilege is actually a bolstering, rather than a dilution, of such privileges. In *Spratley*, the Court listed in camera review as one of a trial court's "numerous tools it must employ to *prevent* unwarranted disclosure" of information that may otherwise be confidential or privileged. *Id.* (emphasis added). Indeed, it is "[t]he liberal use of [such] tools, and others inherent in a trial court's authority to govern the conduct of proceedings," that creates "a prudent and sufficient safeguard against overbroad disclosure." *Id.*

Hospital's incident reports from discovery by the Cannons. The affidavit merely establishes a prima facie showing that the privilege might apply. Given the nature of the parties' competing interests in the discovery, or protection from discovery, of these incident reports, the trial court should not have based its decision on the applicability of the care review privilege solely on Ms. Wright's affidavit. We therefore remand the case to the trial court to conduct an in camera inspection of the incident reports connected to Mr. Cannon's hospital stay in order to gain a proper evidentiary basis on which to make the determination whether these reports are indeed protected from discovery under the care review privilege.

¶ 25 I CONCUR: RUSSELL W. BENCH, Associate Presiding Judge.