2008 UT 46

**Dennis MOLER, an individual; and Marilynn Moler, an individual, Plaintiffs and Appellants,**

v.

**CW MANAGEMENT CORPORATION, a Utah corporation; and Christopher McCandless, an individual, Defendants and Appellees.**

No. 20070048.

Supreme Court of Utah.

July 18, 2008.

Richard F. Ensor, Evan S. Strassberg, Salt Lake City, for plaintiffs.

Lincoln W. Hobbs, Lisa M. McGarry, Salt Lake City, for defendants.

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶ 1 This case requires us to decide whether rule 504 of the Utah Rules of Evidence, which delineates the lawyer-client privilege, protects communications between a lawyer and a client's representative, even if that client is an individual and not a corporation or other business entity. We hold that such communications may be privileged regardless of whether the client is a corporation or a natural person so long as the requirements of rule 504 are met. Under rule 504(a)(4), a client's representative is "one having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client, or one specifically authorized to communicate with the lawyer concerning a legal matter."

## BACKGROUND

¶ 2 The parties to this case dispute whether communications between Dennis and Marilynn Moler (the "Molers") and their daughter, Wendy Moler–Lewis, are protected by the lawyer-client privilege. In 2002, the Molers contracted to purchase a new home from Franklin Homes in a new gated community named Redfeather Estates in Sandy, Utah.

At the time the Molers first met with Redfeather Estates' real estate agent, Christopher McCandless, the homes in Redfeather Estates were burdened with covenants, conditions, and restrictions ("CC & Rs") that limited occupancy to households with at least one person fifty-five years of age or older. But before the Molers closed on their purchase, the sellers executed and recorded amended CC & Rs removing the age restriction from Redfeather Estates. The Molers learned of the restriction's removal only after they closed on the purchase of their residence. They eventually filed this lawsuit against McCandless, Franklin Homes, and other entities involved in Redfeather Estates' development and sale (collectively, the "Sellers").[1] The lawsuit alleged several causes of action related to the sale of the property and the removal of the restriction.

¶ 3 Before filing suit, the Molers enlisted their daughter, Moler–Lewis, to help them with various aspects of the dispute. Although Moler–Lewis graduated from law school and was at one time a practicing attorney, she has never represented the Molers in this action. She did, however, assist the Molers in identifying and retaining a law firm to represent them. In addition, Moler–Lewis was present and participated in some conversations between the Molers and McCandless. Therefore, Moler–Lewis is also a witness to some of the facts underlying the lawsuit.

¶ 4 There are two sets of communications between the Molers and Moler–Lewis at issue in this case. The first set occurred before the Molers retained counsel in anticipation of litigation. The second set occurred after the Molers retained counsel. After the Molers filed suit, counsel for the Sellers deposed Mr. Moler. Mr. Moler was asked to describe in detail all communications he and Mrs. Moler had with Moler–Lewis concerning the lawsuit, including those where the Molers' counsel was present. Counsel for the Molers objected and instructed Mr. Moler not to answer, invoking the lawyer-client

1. Several of the original defendants named in this lawsuit settled with the Molers and are no longer parties. For convenience and because which of the defendants sought to compel Mr.

Moler's testimony is irrelevant to the issue before us, we refer throughout this opinion to any and all defendants as the "Sellers."

privilege. But later in the same deposition, Mr. Moler recounted some conversations he and Mrs. Moler had with Moler–Lewis prior to retaining counsel.

¶ 5 The Sellers moved the district court to compel Mr. Moler to answer the questions that he had refused to answer about those conversations, and the district court granted the motion, holding that the lawyer-client privilege did not apply. The court reasoned that the conversations with Moler–Lewis could not be privileged because Moler–Lewis was neither the Molers' attorney nor their representative as contemplated by rule 504(a)(4) in that she was not retained for legal advice and her services were not "essential to [the Molers'] representation." In addition, the district court held that even if Moler–Lewis was the Molers' representative, Mr. Moler had waived the privilege by testifying as to other conversations between himself and Moler–Lewis that occurred before the Molers retained counsel in anticipation of litigation.

¶ 6 The Molers filed this interlocutory appeal, and we have jurisdiction pursuant to Utah Code section 78A-3-102(3)(a) (2008).

## STANDARD OF REVIEW

¶ 7 "The existence of a privilege is a question of law for the court, which we review for correctness, giving no deference to the trial court's determination." [2]

## ANALYSIS

¶ 8 We begin and end our analysis with a plain-language review of Utah Rule of Evidence 504:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing *confidential communications* made for the purpose of facilitating the rendition of professional legal services to the client *between the client and the client's representatives,* lawyers, lawyer's representatives, and lawyers representing others in matters of common interest, and among the client's representatives, law-

yers, lawyer's representatives, and lawyers representing others in matters of common interest, in any combination.[3]

Therefore, in order to determine whether each communication at issue was privileged, the district court was required to answer two questions: First, was Moler–Lewis a representative of the Molers as defined in rule 504(a)(4)? Second, was each communication at issue a "confidential communication" as defined in rule 504(a)(5) and (6)? We will first discuss whether the district court correctly applied rule 504 to the communications at issue. Then we will review the district court's ruling that Mr. Moler waived the privilege by testifying as to conversations between the Molers and Moler–Lewis that occurred before the Molers retained counsel in anticipation of litigation.

## I.  WAS MOLER–LEWIS A "REPRESENTATIVE OF THE CLIENT"?

¶ 9 Utah Rule of Evidence 504(a)(4) defines a "representative of the client" as "one having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client, or one specifically authorized to communicate with the lawyer concerning a legal matter." Whether Moler–Lewis qualified as such a representative depends, in part, on whether the Molers qualified as "clients." The Sellers contend that the Molers could not have been "clients" as that term is used in the definitional subsection (a)(4) because "client" in that subsection is limited to corporate entities and other legally recognized entities that must act through human beings to conduct their affairs. In support of this argument, the Sellers point to the advisory committee note to rule 504: "The committee revised the proposed rule ... to address the issues raised in *Upjohn Co. v. United States* as to when communications involving representatives of a corporation are protected by privilege." (Citation omitted.) They argue that because the rule was revised in response to *Upjohn,* which resolved the issue of who may represent a corporate entity, only corpo-

---

**2.** *Price v. Armour,* 949 P.2d 1251, 1254 (Utah 1997).

**3.** Utah R. Evid. 504(b) (emphases added).

rations, and not natural persons, can have representatives.[4] The Sellers urge us to adopt a rule restricting to corporations and other business entities the right to have representatives with whom communications might be confidential.

¶ 10 We disagree with the Sellers' reasoning as to the meaning of the term "client" in rule 504. In our view, the term "client" as used throughout the rule refers not just to corporations or other business entities, but to natural persons as well. Indeed, "client" is specifically defined in subsection (a)(1) to include "a person."

¶ 11 Further, the fact that this rule was revised in response to the *Upjohn* case does not lead to the conclusion that "client" in rule 504(b) should be read to exclude individuals. In *Upjohn*, the United States Supreme Court held that low-level and mid-level employees—not just those in the "control group"— could potentially be protected by the attorney-client privilege.[5] While this holding defines the potential scope of the federal privilege in the corporate context, it does not purport to limit the term "representative of a client" to that context. The Sellers would read "client" as used in the first line of subsection (b) to be different from the same term as used subsequently in the same subsection and throughout the rule. That is, in the first line of subsection (b), under the Sellers' interpretation, "client" refers only to corporate entities, but in every other usage throughout the rule, "client" includes natural persons as well. Such a reading is contrary to the plain language of the rule and without justification. The plain language of the rule, which explicitly defines client to include a person, leads us to reject the inference the Sellers draw from the *Upjohn* case.

¶ 12 We recognize that some jurisdictions have adopted the contrary rule that only corporate clients or similar entities may have representatives.[6] We also recognize the concern that allowing individuals to have representatives could extend the privilege to a limitless number of third parties, potentially subverting the truth-finding function of courts. But in our view, this concern is adequately addressed by the language of the rule, which carefully limits a "representative" to "one having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client, or one specifically authorized to communicate with the lawyer concerning a legal matter." Because the rule so limits who may be a representative, our holding will not unduly expand the privilege.

¶ 13 Moreover, from a policy perspective, we find it salutary that natural persons should be afforded the same level of protection when communicating with their representatives as corporations now enjoy. In many cases, an individual's need to consult with an advisor regarding the facilitation of legal services may be every bit as acute as the need of a corporation to do so, often more so.

■ ¶ 14 In this case, however, the district court found that such protection did not extend to the Molers because Moler–Lewis did not qualify as their representative. The district court drew this conclusion because Moler–Lewis was not retained to give legal advice and her services were not "essential to [the Molers'] representation." In so concluding, the district court imposed a requirement not found in rule 504. In order to resolve whether Moler–Lewis was a representative of the client, the district court need make only the following factual determination: Was Moler–Lewis "one having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client, or one specifically authorized to communicate with the lawyer concerning a legal matter"? Because the district court applied the wrong standard, it did not make the findings necessary for us to conduct a review using the correct standard. Therefore, we remand for the district court to make factual determinations and apply the

---

4.   449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

5.   *Id.* at 391–92, 101 S.Ct. 677.

6.   *See, e.g., State v. Jancsek,* 302 Or. 270, 730 P.2d 14, 21 (1986) (holding that the "client" to which the definition of "representative" applies must be a business entity).

correct standard to resolve whether Moler–Lewis qualified as the Molers' representative.

## II. DID EACH COMMUNICATION AT ISSUE CONSTITUTE A "CONFIDENTIAL COMMUNICATION" SUCH THAT IT MIGHT QUALIFY AS PRIVILEGED?

¶ 15 The second question that must be resolved is whether each communication at issue is a "confidential communication" such that it might qualify as privileged. Subsection (a)(5) of rule 504 defines a "communication" to include "advice given by the lawyer in the course of representing the client and includes disclosures of the client and the client's representatives to the lawyer or the lawyer's representative incidental to the professional relationship." And under subsection (a)(6), a communication is confidential if it is (1) "confidential" and (2) made for the purpose of "facilitating the rendition of professional legal services to the client." To satisfy the confidentiality requirement under subsection (a)(6), the communication must "not [be] intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." [7] Because the district court concluded that Moler–Lewis was not the Molers' representative, it did not reach this question. Thus, we remand for the district court to determine as to each communication in dispute whether the communication was (1) confidential and (2) made for the purpose of facilitating the rendition of professional legal services to the client.

## III. IF A PRIVILEGE DID ATTACH TO EACH COMMUNICATION AT ISSUE, DID MR. MOLER WAIVE IT BY ANSWERING CERTAIN DEPOSITION QUESTIONS?

¶ 16 The resolution of the final issue—whether Mr. Moler waived the privilege—is dependent upon the district court's resolution on remand of when, if at all, the lawyer-client privilege came into existence. Because the district court used the wrong legal standard in holding that Moler–Lewis was not the Molers' representative and that question remains unresolved, we are unable to reach a conclusion as to whether Mr. Moler waived the lawyer-client privilege.

¶ 17 Waiver is the intentional relinquishment of a known right.[8] To establish waiver, a defendant must show that the plaintiff had (1) an existing right, (2) knowledge of its existence, and (3) an intent to relinquish the right.[9] Therefore, in order to waive the privilege as to any given communication, the lawyer-client privilege must exist when the communication at issue occurred, and the holder of the privilege must consent to the disclosure. A plain-language reading of rule 507(a) of the Utah Rules of Evidence confirms this principle:

> A person upon whom these rules confer a privilege against disclosure of the confidential matter or communication waives the privilege if the person or a predecessor *while holder of the privilege* voluntarily discloses or consents to the disclosure of any significant part of the matter or communication. (Emphasis added.)

The language of the rule suggests that there are two temporal requirements for waiver. First, the communication must be privileged at the time it occurred. Second, the disclosure that constitutes waiver of the privilege must be made while the person disclosing holds the privilege.

¶ 18 The district court, although concluding that the privilege never existed, nevertheless concluded that the privilege, if it did exist, had been waived. Understandably, the district court failed to make findings of fact as to when the privilege came into existence. Furthermore, the record provided to us on this appeal (and which, presumably, is the same record that was before the district court) does not contain a full transcript of the

**7.** Utah R. Evid. 504(a)(6).

**8.** *Soter's, Inc. v. Deseret Fed. Sav. & Loan Ass'n,* 857 P.2d 935, 939–42 (Utah 1993).

**9.** *Id.* at 940.

deposition at which Mr. Moler apparently testified about discussions between the Molers and Moler–Lewis. We therefore are unable to determine when the privilege attached and, without the benefit of a complete record, are also uncertain on what basis the district court concluded that Mr. Moler waived the privilege.

¶ 19 Furthermore, it is apparent from the record we do have that Moler–Lewis was present on numerous occasions both before and after the Molers retained counsel in anticipation of litigation. Even if Mr. Moler voluntarily testified regarding one or more confidential matters, it does not follow that he waived all lawyer-client privileges for all communications. Rule 507(a) restricts the scope of each waiver to a communication about which "any significant part of the matter or communication" has been disclosed. Therefore, Mr. Moler did not waive the privilege for a particular communication if he did not disclose any significant part of the particular matter or communication at issue.

¶ 20 We therefore remand to the district court for an assessment of whether a privilege arose under the framework we have described and, if so, when it arose. Only when these questions are resolved may the district court properly determine whether Mr. Moler waived the privilege during his deposition.

### CONCLUSION

¶ 21 We conclude that communications between clients and their representatives may be privileged regardless of whether the client is a corporation or a natural person. Rule 504(a)(4) defines a representative as "one having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client, or one specifically authorized to communicate with the lawyer concerning a legal matter." We remand to the district court to make a determination as to each communication at issue in this case using the framework we have described.

¶ 22 Chief Justice DURHAM, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice DURRANT'S opinion.