2018 UT App 15

# THE UTAH COURT OF APPEALS

ELDAD VERED,
Appellee,
*v.*
TOOELE HOSPITAL CORPORATION, EXECUTIVE MEDICAL COMMITTEE
OF THE MEDICAL STAFF OF THE MOUNTAIN WEST MEDICAL CENTER,
TRACY SCHAFFER, AND YVONNE NIELSON,
Appellants.

Opinion
No. 20150866-CA
Filed January 25, 2018

Third District Court, Tooele Department
The Honorable Robert W. Adkins
No. 130301902

Curtis J. Drake, Mark O. Morris, and Paul W.
Shakespear, Attorneys for Appellants

Gary R. Guelker and Janet I. Jenson, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and JILL M. POHLMAN concurred.

MORTENSEN, Judge:

¶1    In this interlocutory appeal, we address questions regarding the invocation of the care-review privilege and the mechanics of a privilege log in establishing the applicability of that privilege. Twice the district court rejected Defendants' assertion that they had established that the care-review privilege applied. Defendants ask this court to give them a third bite at the apple by remanding to the district court so that they may reassert their twice-rejected arguments regarding the care-review privilege. We decline to do so and affirm the district court's decision.

BACKGROUND

¶2     Dr. Eldad Vered filed suit against Defendants, alleging breach of contract, defamation, and interference with economic relations. In February 2014, Dr. Vered served Defendants with his first set of discovery requests. In April, Defendants responded, setting off a string of discovery disputes between the parties. On September 3 of that year, Dr. Vered filed with the district court a statement of discovery issues and asked for the court's intervention. He specifically requested that the court order Defendants "to produce all documents and things which defendants agreed to produce in their responses to Plaintiff's First Set of Requests for Production of Documents," "to answer all of the Interrogatories," and "to respond to all of the Requests for Production of Documents."

¶3     On September 11, Defendants filed an opposition to Dr. Vered's statement of discovery issues. They argued that Dr. Vered's motion was moot because "Defendants are already, and have been in the process of finalizing a privilege log and supplemental responses with the discoverable information and documents sought" by Dr. Vered. They also noted that Dr. Vered's counsel had failed to "meet and confer in person or by telephone before filing his Statement, as [then] required by Rule 4-502(2)(A)" of the Utah Rules of Judicial Administration,[1] but did not argue that the motion should be denied on that basis.

¶4     The district court set the matter for hearing on October 6. Before the hearing, but after filing their opposition, Defendants provided Dr. Vered with a privilege log that identified 119

---

1. This rule has since been moved to the Utah Rules of Civil Procedure and requires that, when filing a statement of discovery issues, a party include a certification that it "has in good faith conferred or attempted to confer with the other affected parties in person or by telephone in an effort to resolve the dispute without court action." *See* Utah R. Civ. P. 37(a)(2)(B).

documents purportedly protected by the care-review privilege. At the hearing, the parties and the court discussed not only the statement of discovery issues but also the privilege log. Defendants did not argue that Dr. Vered had failed to comply with the meet-and-confer requirement.

¶5    Defendants indicated that there was not "necessarily a dispute as to" some of the issues raised by Dr. Vered, but they disagreed as to the application of the care-review privilege. Dr. Vered argued that Defendants, as the "party asserting the privilege[,] must provide [an] . . . 'adequate evidentiary basis to show that the documents were prepared specifically to be submitted for review purposes.'" (Quoting *Wilson v. IHC Hosps., Inc.*, 2012 UT 43, ¶ 115, 289 P.3d 369.) He also claimed that *Wilson* stood for the proposition that a party asserting the privilege must "submit an affidavit or provide some witness testimony to show that the documents that [it is] claiming as a privilege really fall within that privilege," which Defendants failed to do. Ultimately, Dr. Vered asked the court to compel the production of all the documents listed on the privilege log because Defendants had failed to identify an evidentiary basis for claiming privilege and thus had not "met their burden of establishing" that the care-review privilege applied.

¶6    Defendants countered that they "read the privilege a little . . . differently" in that they believed "[i]t's a very broad privilege." They also offered that they had "no problem providing an affidavit or a witness to lay the foundation for the applicable privilege, but this process did not allow for [them] to provide an affidavit."

¶7    The district court concluded that "there ha[d] not been an adequate evidentiary basis to show that the documents were specifically prepared to be submitted for the review purposes" and ordered "that all of the documents be produced." Defendants asked for clarification: "As far as the production of the care review materials, if we provide the evidentiary basis or [are] you saying that that door is shut[?]" The district court

responded, "That door is shut at this point," and asked Dr. Vered's attorney to prepare a written order.

¶8     When Dr. Vered's attorney submitted the proposed written order, Defendants objected and filed a motion for reconsideration. They requested that the district court reconsider its order requiring production of the documents for which Defendants had suggested the care-review privilege applied. Defendants argued that "the Court did not have the proper information before it at the hearing" because Dr. Vered had presented a "surprise argument," leaving Defendants unprepared to "provide[] the proper information before the Hearing." Defendants reasoned that if they had been prepared to provide the district court with the "proper information," the court "then would likely have followed the steps established by other Utah courts when presented with an issue of whether a party's care review documents are privileged." (Citing *Wilson*, 2012 UT 43; *Cannon v. Salt Lake Reg'l Med. Center, Inc.*, 2005 UT App 352, 121 P.3d 74.) Defendants also argued that they had been unprepared to provide an affidavit supporting their invocations of the care-review privilege because Dr. Vered had been "lying in wait" until the hearing to take the "secret position" that Defendants had waived their claims of privilege.[2]

¶9     As exhibits to their filings, Defendants attached two documents of particular note. The first was a letter written by Defendants' attorney in July 2014, in which he promised that "for those documents that Defendants withhold[] because of privilege or work product, we will provide you with an appropriate privilege log." This letter was sent three months before Defendants provided their privilege log to Dr. Vered. The

---

2. In their motion to reconsider, Defendants again noted that Dr. Vered had failed to "satisfy[] Rule 4-502's requirement of a meet and confer conversation" before filing his statement of discovery issues, but they did not argue that Dr. Vered's failure to meet and confer was a basis for reconsidering the court's order.

second exhibit was an affidavit from the "Quality Director for Mountain West Medical Center." In that affidavit, the Quality Director outlined the types of documents contained in Dr. Vered's credentialing and quality files—documents for which Defendants had claimed the care-review privilege applied—and represented that the documents in the files "are and were gathered and submitted to Mountain West Medical Center and its in-house committees specifically for review purposes . . . , for the purpose of reducing morbidity and mortality, and for the evaluation and improvement of health care." The Quality Director further represented that any "individuals who reviewed this information did so for care review, peer review, and improvement purposes."

¶10 Around the time Defendants filed their motion for reconsideration, the Utah Supreme Court issued its decision in *Allred v. Saunders*, 2014 UT 43, 342 P.3d 204. That decision addressed the care-review privilege; clarified that the privilege protects "information compiled or created during the . . . care-review process from both discovery and receipt into evidence"; addressed amendments to rule 26 of the Utah Rules of Civil Procedure, along with their impact on the care-review privilege; and explained that

> in camera review is not required in all cases. Rather, parties seeking to withhold arguably privileged material from discovery must create a privilege log identifying each document or item withheld from production and provide sufficient foundational information to allow the court and opposing parties to evaluate the validity of the claimed privilege.

*Id.* ¶¶ 9, 12, 28.

¶11 The parties appeared for a hearing on Defendants' motion to reconsider in August 2015. Defendants reiterated that Dr. Vered did not challenge the adequacy of the evidentiary basis

supporting the claim of privilege in his statement of discovery issues but raised it for the first time at the October 2014 hearing. They also argued that *Allred* constituted a "change in the law" that warranted reconsideration of the court's order. Specifically, Defendants argued that under *Allred*, "there is no requirement of an affidavit" and that the parties were "only at stage one. We have provided a privilege log to the plaintiff. The opposing party has not raised objections to the . . . privileges asserted in that log," and Defendants expressed that they did not think "the situation [was] ripe at this time for the Court to undertake an in-camera review." Instead, Defendants asked the court for "a couple of weeks to go back and supplement this privilege log."

¶12    Dr. Vered responded that an objection to the privilege log could not have been made before the October 2014 hearing because the log had not been received until just days before the hearing. He also argued that the problem with the privilege log "wasn't that it wasn't accompanied by an affidavit per se. It was really that there was nothing on the log that provided any foundation showing why the privilege applied." In his view, "The case law was clear that you have to provide an adequate evidentiary basis to show that the documents were prepared specifically to be submitted for review purposes."

¶13    Defendants' attorney admitted several times throughout the August hearing that the original privilege log was deficient.[3] He acknowledged that he did not know whether the privilege log "satisfie[d] all the foundational requirements" set forth in *Allred*, and that they could "do a better job." The court ultimately

---

3. Defendants' privilege log contained vague descriptions, such as "Letter re: incomplete proctoring card"; "Email chain re: patient issues"; or "OB Staff Meeting Agenda." These descriptions miss the point of the log, which is to supply sufficient information for both opposing counsel and potentially a court to determine whether a privilege applies, rather than simply to list possible privileged documents.

explained that it "could not conclude and still today cannot conclude that [the documents] are privileged," and, because Defendants had not "show[n] that the documents are privileged," the court "affirm[ed] its prior oral ruling."

¶14 Defendants now appeal.

ISSUES AND STANDARDS OF REVIEW

¶15 Defendants raise three issues for our review. They first ask us to decide whether the district court erroneously determined that Defendants waived their claims of privilege by not providing a supporting affidavit with their privilege log to lay the evidentiary foundation for the privilege. Next, Defendants maintain the district court abused its discretion when it ordered Defendants to produce the requested documents, without first reviewing the documents in camera. Finally, Defendants assert the district court should have required Dr. Vered to engage in additional discovery dispute procedures before ordering Defendants to provide the requested documents.

¶16 "We generally review a trial court's discovery rulings for an abuse of discretion," *Bluemel v. Freestone*, 2009 UT App 16, ¶ 4, 202 P.3d 304, including a district court's "determination of whether in camera review is necessary," *Allred v. Saunders*, 2014 UT 43, ¶ 24, 342 P.3d 204. But where Defendants' arguments rest on an assertion that the district court misinterpreted the law, we review those issues for correctness. *See Conley v. Department of Health*, 2012 UT App 274, ¶ 7, 287 P.3d 452.

ANALYSIS

¶17 Throughout the discovery process below and the briefs on appeal, the parties disagree as to what Utah case law actually requires when it comes to asserting the care-review privilege. We thus begin with a discussion of the privilege and how it is

properly invoked. We then turn to each of Defendants' arguments on appeal.

¶18    In *Benson ex rel. Benson v. I.H.C. Hospitals, Inc.*, our supreme court discussed some of the differences between the care-review and peer-review privileges. 866 P.2d 537, 539 (Utah 1993). The care-review privilege, set forth in section 26-25-1(3) of the Utah Code, authorizes, without the risk of liability, certain private medical information to be provided to select entities for the purposes of "(a) study and advancing medical research, with the purpose of reducing the incidence of disease, morbidity, or mortality; or (b) the evaluation and improvement of hospital and health care rendered by hospitals, health facilities, or health care providers." Utah Code Ann. § 26-25-1(3) (LexisNexis 2012); *see also Benson*, 866 P.2d at 539. The purpose of this privilege

> is to improve medical care by allowing health-care personnel to reduce "morbidity or mortality" and to provide information to evaluate and improve "hospital and health care." Without the privilege, personnel might be reluctant to give such information, and the accuracy of the information and the effectiveness of the studies would diminish greatly.

*Benson*, 866 P.2d at 539.

¶19    On the other hand, the peer-review privilege protects reviews undertaken "for the purpose of evaluating any health care provider regarding (a) professional ethics, (b) medical competence, (c) moral turpitude, or (d) substance abuse." *Id.* (quoting Utah Code Ann. § 58-12-43(7) (Michie Supp. 1992)). This privilege now appears in section 58-13-5 of the Utah Code. *See* Utah Code Ann. § 58-13-5(7) (LexisNexis 2016).

¶20    Defendants argue that the district court erred in its application of both of these privileges. Despite the fact that the district court's order mentioned the peer-review privilege,

Defendants never asserted the peer-review privilege in their privilege log as a reason for withholding documents. It is therefore questionable whether any issue involving the peer-review privilege was preserved for appeal. *See Wolferts v. Wolferts*, 2013 UT App 235, ¶ 19, 315 P.3d 448 ("An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on that issue."). This is not to say that the peer-review privilege was never mentioned below. The district court's order found "that Defendants have failed to provide an adequate privilege log identifying those documents which Defendants claim are protected by the care *and/or peer review privilege*." (Emphasis added.) This seems to be a symptom of the broader problem in this case, which is a failure by all parties to distinguish between these two privileges when making their arguments.

¶21   Regardless, our review requires us to decide whether Defendants' privilege log adequately demonstrated that a given privilege applied, as that is the only place in the record where the documents at issue were identified as privileged. On that list of 119 documents, under a heading of "Privilege Type," Defendants asserted the care-review privilege 118 times.[4] Defendants never asserted the peer-review privilege. Thus, even if the district court's passing mention of the peer-review privilege somehow preserved Defendants' argument, we would nevertheless affirm. Where Defendants never claimed that the peer-review privilege applied to a particular document, they necessarily never set forth an adequate evidentiary basis to support a claim of that privilege.

¶22   We therefore focus this opinion primarily on whether the district court appropriately interpreted and applied the care-

---

4. The other document included on the log was one for which Defendants asserted the attorney-client privilege, and that privilege is not at issue in this appeal.

review privilege. In *Wilson v. IHC Hospitals, Inc.*, the Utah Supreme Court reiterated that the care-review privilege

> protects only those documents *prepared specifically* to be submitted for review purposes. It does not extend to documents that *might* or *could* be used in the review process . . . . [A]ny broader reading of the rule would permit hospitals to argue that all medical documents prepared by hospital personnel are created to improve health care rendered by a hospital and are protected by the privilege.

2012 UT 43, ¶ 114, 289 P.3d 369 (citations and internal quotation marks omitted). With this framework in mind, and as we discuss in greater detail below, we conclude that Defendants' privilege log did not adequately demonstrate that the documents they sought to withhold were prepared specifically for care-review purposes. *See infra* ¶¶ 26–29.

## I. Alleged Finding of Waiver

¶23 Defendants first ask us to decide whether the district court erred by finding that the care-review privilege is waivable. Before we can reach that question, we must first ask another—whether the district court ever made such a finding. We conclude that it did not. In its order denying Defendants' motion for reconsideration, the district court found only that "Defendants have failed to provide an adequate privilege log identifying those documents which Defendants claim are protected." This was the basis for denying Defendants' motion and ordering Defendants to produce the requested documents. The district court never addressed whether the claims of privilege had been waived; it concluded that Defendants had not met their burden of demonstrating that the privilege applied.[5]

---

5. The relevant section of Defendants' brief includes no record citations to support a claim that the district court ever made a

(continued…)

Accordingly, the district court concluded that Defendants were "precluded from asserting the [care-review] privilege" because they had "failed to provide a sufficient evidentiary basis that would allow the court to determine whether the documents being withheld are subject to" the privilege.[6] In other words, we reject Defendants' attempt to characterize the district court's ruling as one premised on a waiver of privilege.

¶24 Instead, we turn to Defendants' secondary contention that the district court's ruling was in error because it rested on the flawed conclusion that Defendants were required to provide an affidavit in support of their claims of privilege. Although there was discussion at the hearing regarding a potential obligation for Defendants to provide an affidavit, the court did not base its decision on Defendants' failure to do so. Rather, the court's decision was broadly based on Defendants' failure to provide an adequate evidentiary basis for deeming the documents privileged. Moreover, to the extent that Dr. Vered understood *Wilson* to require a party to submit an affidavit, that misunderstanding did not extend to the court's analysis in reaching its decision. We have no difficultly deciding that any misunderstanding about the law on the part of Dr. Vered did not affect the district court's ruling.

¶25 At the October 2014 hearing, Dr. Vered argued that to assert the care-review privilege, "you need to submit an affidavit or provide some witness testimony to show that the documents that you're claiming as a privilege really fall within that

---

(…continued)
finding of waiver. However, we acknowledge that a party who fails to properly assert an applicable privilege functionally waives that privilege.

6. While seemingly harsh, this is the net effect of a failure to demonstrate that the privilege applies—a document that might otherwise be protected by statute becomes discoverable.

privilege." On appeal, Defendants argue that "[t]he trial court agreed with Dr. Vered," finding that "by failing to provide an affidavit, Defendants had somehow waived their right to assert the statutory care-review . . . privilege[] and ordered Defendants to produce the disputed documents." But the page of the record cited for this supposed agreement contains no support for it. Instead, the district court found "that there has not been an adequate evidentiary basis to show that the documents were specifically prepared to be submitted for . . . review purposes." The court made no mention of an affidavit; it simply found that, as presented, Defendants had not laid the foundation necessary for asserting the care-review privilege. And we cannot say that this finding was in error.

¶26    In *Cannon v. Salt Lake Regional Medical Center, Inc.*, 2005 UT App 352, 121 P.3d 74, we considered whether a hospital had set forth an adequate evidentiary basis to assert the care-review privilege and prevent discovery of incident reports. *Id.* ¶ 11. The hospital had asserted the privilege by submitting the affidavit of its Risk Manager in the Quality Assurance Department. *Id.* ¶ 12. The affidavit asserted, among other things, that the incident reports were "created specifically for submission to the Quality Assurance Department" and were "not created or used for any purpose other than to evaluate and improve health care at the Hospital." *Id.* We concluded that the affidavit was insufficient to establish that the incident reports were privileged under the care review privilege and were not subject to discovery. *Id.* ¶ 19. We did, however, determine "that the affidavit establishe[d] something of a prima facie showing that the privilege applie[d]" and remanded for the district court "to review the incident reports in camera to determine whether the privilege indeed applie[d] to these documents." *Id.* ¶ 21.

¶27    Unlike the affidavit in *Cannon*, the privilege log in the present case did not even suggest "the possibility that the privilege applies." *Cf. id.* ¶¶ 20–21 (explaining that although the affidavit in that case spoke "in conclusory terms, carefully tracking the key elements of the statutory language . . . rather

than providing more descriptive, detailed, and helpful information about the reports for which the privilege is asserted," it nevertheless "suggest[ed] the possibility that the privilege applies"). Instead, the privilege log contains entirely unhelpful descriptions such as "Letter re: incomplete proctoring card"; "Email chain re: patient issues"; or "OB Staff Meeting Agenda." There is nothing in these descriptions that even hints at why the privilege might apply.

¶28 In short, Defendants are correct that they were not required to provide an affidavit. *Cf. Allred v. Saunders*, 2014 UT 43, ¶ 26, 342 P.3d 204 (explaining that "our rules contemplate that a party seeking to withhold relevant, but arguably privileged, material from discovery will prepare and produce a privilege log sufficient to allow the opposing party to evaluate the claim of privilege"). But because our rules begin with a presumption in favor of discovery, Defendants bore the burden of providing a sufficient evidentiary basis for their assertion of the care-review privilege. *See id.* ¶ 25. This evidentiary basis could come in the form of a privilege log, *see id.* ¶ 26, an affidavit,[7] or some other way so long as the party asserting the privilege provides "sufficient foundational information for each withheld document or item to allow an individualized assessment as to the applicability of the claimed privilege," *id.*

¶29 Defendants' privilege log lacked this foundational information. Because the district court never explicitly required Defendants to provide an affidavit, and because our own review of the privilege log reveals that Defendants failed to meet their burden, we reject Defendants' argument that the district court erroneously imposed an affidavit requirement upon them. Said

---

7. Normally, because of the volume of records involved in complicated discovery disputes, we would expect to see a privilege log for efficiency reasons. The point is that while *Allred* does not require an affidavit, we also do not read *Allred* as prohibiting an affidavit. *See infra* ¶¶ 28–29.

another way, we see no indication that the district court agreed with Dr. Vered's assertion that an affidavit was required, but even if it had, that error was harmless. When applying the proper standard, articulated in *Allred*, it is apparent that Defendants' privilege log was insufficient due to its lack of particularized detail. Specifically, *Allred* clarified that "the party asserting a privilege" bears the burden "to establish that the material sought is protected from discovery." *Id.* ¶ 25. And Defendants simply did not meet that burden.

## II. Clarification of Rule 26 Requirements

¶30     We take a brief detour from reviewing Defendants' claims on appeal to clarify the requirements of rule 26 of the Utah Rules of Civil Procedure, especially as that rule relates to assertions of the care-review privilege. Rule 26 provides:

> If a party withholds discoverable information by claiming that it is privileged . . . the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced in a manner that, without revealing the information itself, will enable other parties to evaluate the claim.

Utah R. Civ. P. 26(b)(8)(A).

¶31     Despite some suggestion in the briefs to the contrary, this requirement to specifically identify and describe withheld documents when a privilege is claimed is not new.[8] And the use

---

8. Although we cite to the most current version of Rule 26, we note that the amendments are not new. In 2002, subsection (b)(5) was added, which is substantively identical to the current subsection (b)(8)(A):

> When a party withholds information otherwise discoverable under these rules by claiming that it is

(continued…)

of a privilege log to comply with this requirement did not originate with *Allred*. Indeed, the *Allred* court acknowledged, "Parties routinely provide privilege logs when asserting that particular documents are privileged from discovery." *Allred*, 2014 UT 43, ¶ 26. And while *Allred* considered whether the privilege log provided in that case was sufficient, it made no pronouncement regarding what form a privilege log must take. Rather, what is required is a description of "the nature of the documents, communications, or things not produced in a manner that, without revealing the information itself, will enable other parties to evaluate the claim." Utah R. Civ. P. 26(b)(8)(A). What form a privilege log takes is immaterial, so long as the required information is, in fact, provided. *See Allred*, 2014 UT 43, ¶ 28 (requiring that "parties seeking to withhold arguably privileged material from discovery *must create* a privilege log identifying each document or item withheld from production" but making no mention of what form a privilege log must take (emphasis added)).

## III. Failure to Review Documents In Camera

¶32 Beyond their argument that the district court erroneously expected them to submit an affidavit, Defendants raise the related issue of the district court's refusal to review the purportedly privileged documents in camera before ordering their production. This issue is easily disposed of. The Utah Supreme Court in *Allred v. Saunders*, clarified

---

(…continued)

> privileged . . . the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Utah R. Civ. P. 26(b)(5) (2003).

> that in camera review is not required in all cases. Rather, parties seeking to withhold arguably privileged material from discovery must create a privilege log identifying each document or item withheld from production and provide sufficient foundational information to allow the court and opposing parties to evaluate the validity of the claimed privilege. The district court may, *in its sound discretion*, then undertake in camera review of any questionably-withheld material.

2014 UT 43, ¶ 28 (emphasis added). Not only did *Allred* make clear that in camera review is not always required, but it also made clear that the decision to conduct such a review is a matter of the district court's discretion. *See id.* Additionally, the court's use of the word "then" indicates that any in camera review would take place *after* a party claiming the privilege provides a privilege log or the equivalent, complete with "sufficient foundational information." *See id.*

¶33   We have already determined that Defendants failed to provide a sufficient privilege log or alternative foundational information. Thus, according to *Allred*, the triggering event for an in camera review never took place in this case. Furthermore, because Defendants did not provide adequate information for their assertion of privilege, we cannot conclude that the district court abused "its sound discretion" by not conducting an in camera review. *See id.* We therefore reject Defendants' argument that the district court's declination of an in camera review warrants reversal.

## IV. Discovery Dispute Requirements

¶34   Defendants' final contention is that the district court "erred for the additional and independent reason that the privilege and waiver issues were never ripe" because it "failed to require Dr. Vered to follow the discovery dispute resolution procedures set forth in Utah Rule of Civil Procedure 37 and

supporting case law." Specifically, Defendants argue that "Dr. Vered never raised any objection to Defendants' privilege log" and that "he did not even attempt to confer with Defendants 'in person or by telephone,' as required by Rule 37."

¶35    To begin, we reiterate that district courts are given "broad latitude" in "handling discovery matters." *Thurston v. Workers Comp. Fund*, 2003 UT App 438, ¶ 25, 83 P.3d 391. And we reject outright Defendants' characterization that Dr. Vered never objected to the privilege log. Every time the privilege log was addressed in front of the district court, Dr. Vered lodged objections to it. Any complaint regarding the timing of those objections is unpersuasive, as Defendants controlled that timing. They did not provide a privilege log when they first responded to Dr. Vered's discovery requests. They did not provide a privilege log when they objected to Dr. Vered's statement of discovery issues. They finally provided a privilege log four days before the October 2014 hearing, and at that hearing Dr. Vered objected.

¶36    As to Defendants' argument that Dr. Vered was required to meet and confer, we cannot say that under the specific circumstances of this case, the district court abused its discretion by not enforcing the meet-and-confer requirement.[9] First, Defendants failed to comply with established standards in asserting the care-review privilege. Second, Defendants never tied their concerns regarding the lack of a meet and confer to their contention that the motion to reconsider should be granted.

---

9. We do not mean to imply that the meet-and-confer requirement is unimportant. We encourage parties to resolve their discovery disputes without court intervention, and district courts have every right to deny relief to a party who has failed to certify that it has first conferred or attempted to confer with the opposing party about the discovery dispute as required by rule 37(a)(2)(B) of the Utah Rules of Civil Procedure.

¶37 We are cognizant that the practice among many lawyers in Utah is to—from time to time—engage in a months-long game of shadowboxing, essentially revealing the bare minimum in a privilege log or other discovery response and asking, "Is this good enough yet?" But a privilege log should be good enough in the first instance. The standard is clear. Lawyers know what is required. The game of back-and-forth can end badly if a judge determines, as it did in this instance, that the log is insufficient; there is no requirement that a district court provide unlimited bites at the apple, and lawyers should not expect there to be.

¶38 Despite clear standards as to what Defendants were required to provide in their privilege log, Defendants still produced an insufficient log. Then, upon filing a motion to reconsider, Defendants hid behind our rules' separate meet-and-confer requirement as a way to avoid producing the documents as ordered by the district court.[10] Indeed, Defendants acknowledged that they "fell short" on providing the "foundational bases" for the documents for which they asserted privilege. Moreover, Defendants raised the meet-and-confer issue as an aside for the first time at the hearing on their motion to reconsider; they provided no argument or discussion on the issue in their motion or supporting memorandum. It was therefore not presented to the court as a basis from which to grant Defendant's motion for reconsideration. That the district court refused to allow this behavior did not amount to an abuse of its discretion.

---

10. In their response to Dr. Vered's statement of discovery issues, Defendants noted that Dr. Vered had failed to "meet and confer in person or by telephone before filing his Statement." But even if that statement could be construed as an argument, it could not have related to the privilege log, because Defendants had not yet provided the privilege log when they filed their opposition. Thus, the distinct argument that Dr. Vered failed to meet and confer on his objections to the privilege log was not raised before the district court until the hearing on the motion to reconsider.

¶39    At the hearing on Defendants' motion to reconsider, they argued that "no meet and confer procedure that the rules require has taken place with respect to the privilege log." In practically the same breath, Defendants acknowledged, concerning the privilege log, "I can see where we fell short on the foundational bases for these things." Defendants' motion to reconsider was supported by a thorough memorandum and based on four arguments. Three of those arguments involved the purported affidavit requirement already discussed. *See supra* ¶¶ 24–29. The final argument was that "in light of the strong legislative and public policy support for, and criminal penalties protecting the privilege that the Court has now ordered pierced, manifest injustice and prejudice to quality health care generally will follow unless the Court reconsiders its finding of waiver." Then, at the hearing, Defendants tacked on a brief mention of the lack of a meet and confer on the privilege log. But this aside distracts from the real question Defendants had asked the district court to reconsider—whether they were required to provide the documents contained in the privilege log.

¶40    At the initial hearing, the district court had concluded that the privilege log was insufficient. At the hearing on the motion to reconsider, the district court stood by that conclusion and announced, "The Court is affirming its prior oral ruling. The 119 documents identified in the 10 page log are ordered produced." The district court based this ruling on the fact that it "could not conclude and still today cannot conclude" that the documents in the log "are privileged." While the district court could have required the parties to meet and confer, its decision to instead respond directly to the merits of the motion to reconsider was not an abuse of discretion. This is so especially in light of Defendants' concession, "I want to candidly tell the Court today that as I look at the privilege log that we attached to our moving papers here, your Honor, I don't know that it satisfies all the foundational requirements[.]"

¶41    In sum, while Defendants did raise their concern that the parties had not met and conferred, that concern was separate

from the reasons it had asked the district court to reverse its ruling on the privilege log.[11] Given the misalignment between these issues and the overall conclusion that Defendants did not meet their burden in producing an adequate privilege log, we affirm the district court's denial of Defendants' motion to reconsider.

CONCLUSION

¶42 The third time is not the charm for Defendants. Where they delayed in producing their privilege log and acknowledge that the privilege log was deficient when it was finally produced, we cannot conclude that the district court erred in ordering Defendants to produce the documents for which they claimed the care-review privilege applies. We thus affirm.

—————

11. This case is plagued by what appear to be at least two ships passing in the night. The parties did not engage in the expected process, where one party produces a privilege log, the parties meet and confer regarding any concerns, and if necessary, the second party files its objections. But these problems are largely of Defendants' making. They ignored their obligation to produce an adequate privilege log. The standard discovery process we would have expected to see got away from everyone because Defendants raised the privilege issue as a defense to why they were so slow to produce documents generally. But the crux of this case is that when Defendants finally asserted the privilege, they did so inadequately. Given this backdrop, combined with a district court's broad discretion in governing discovery, we cannot conclude that the district court abused its discretion in any of the ways alleged by Defendants.