*This opinion is subject to revision before final publication in the Pacific Reporter*

**2019 UT 9**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

LEGRAND P. BELNAP, M.D.,
*Petitioner,*

*v.*

BEN HOWARD, M.D.,
and STEVEN MINTZ, M.D.,
*Respondents.*

No. 20170628
Filed February 28, 2019

On Appeal of Interlocutory Order

Third District, Salt Lake
The Honorable Matthew Bates
No. 160902832

Attorneys:

Peter Stirba, Scott G. Higley, Salt Lake City, for petitioners

Francis M. Wikstrom, Juliette P. White, Alan S. Mouritsen, Salt Lake City, for respondents

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS, JUSTICE PEARCE, and JUDGE KATE APPLEBY joined.

Having recused herself, JUSTICE PETERSEN did not participate herein. COURT OF APPEALS JUDGE KATE APPLEBY sat.

CHIEF JUSTICE DURRANT, opinion of the Court:

## Introduction

¶1   Rule 26(b)(1) of the Utah Rules of Civil Procedure establishes discovery and evidentiary privileges for statements made and documents prepared as part of a health care provider's peer review process. In this case, the parties dispute whether there is an

exception to these privileges for information provided in bad faith. Dr. LeGrand P. Belnap was denied discovery as to allegedly defamatory statements made by Drs. Ben Howard and Steven Mintz in peer review meetings. These statements concerned Dr. Belnap's application for surgical privileges at Jordan Valley Medical Center (JVMC). After the district court denied Dr. Belnap discovery, he filed this interlocutory appeal. Because we find that there is no bad faith exception to rule 26(b)(1), we affirm.

## Background

¶2    In 2009, Dr. Belnap obtained active staff membership and full surgical privileges at Salt Lake Regional Medical Center (SLRMC), a facility owned by Iasis Healthcare Corporation (Iasis). In 2013, SLRMC's Medical Executive Committee, which included Dr. Howard, summarily suspended Dr. Belnap's privileges. The following month, a hearing was held. SLRMC later vacated Dr. Belnap's suspension in full, and he returned to full surgical privileges.

¶3    In September 2013, Dr. Belnap submitted an application to Jordan Valley Medical Center (JVMC)—also owned by Iasis—for appointment to the medical staff and for clinical privileges. In the course of reviewing Dr. Belnap's application, Jordan Valley's Medical Executive Committee (the Executive Committee) solicited input from physicians with whom Dr. Belnap had previously worked, including Drs. Howard and Mintz.

¶4    In May 2015, "Dr. Belnap's counsel received a redacted copy of the minutes from a secret [Executive Committee] meeting held on January 21, 2015." In an amended complaint, Dr. Belnap brought four claims: defamation, tortious interference with prospective economic relations, state antitrust violations, and intentional infliction of emotional distress. The amended complaint describes in specific detail the statements Drs. Howard and Mintz allegedly made on January 21, 2015.

¶5    Drs. Howard and Mintz filed two motions seeking to strike Dr. Belnap's amended complaint or to classify it as privileged under the peer review privilege. The district court denied both motions. Dr. Belnap then filed a notice of deposition of both Drs. Howard and Mintz. Drs. Howard and Mintz filed a statement of discovery issues asking the district court, under Utah Rule of Civil Procedure 26(b)(1) and Utah Code section 26-25-3, to prohibit the discovery, use, or admission into evidence of several documents created during the peer review process and the testimony provided on January 21. The

district court granted the restrictions sought by Drs. Howard and Mintz in their statement of discovery issues.

¶6 Dr. Belnap timely filed a petition for interlocutory appeal in this court. We have jurisdiction pursuant to Utah Rule of Appellate Procedure 5 and Utah Code section 78A-3-102(3)(j).

## Issue and Standard of Review

¶7 We must determine whether there is an exception to the peer review privilege in Utah Rule of Civil Procedure 26(b)(1) for statements made in bad faith. "The existence of a privilege is a question of law for the court, which we review for correctness, giving no deference to the trial court's determination."[1] And a "district court's interpretation of a rule of civil procedure presents a question of law that is reviewed for correctness."[2]

## Analysis

¶8 Dr. Belnap argues that Utah Rule of Civil Procedure 26(b)(1)'s privilege language is ambiguous and, when read in conjunction with the legislative note accompanying that rule, includes a bad faith exception. Because we find that there is no bad faith exception in the plain language or the legislative note, we affirm.

### I. There Is No Bad Faith Exception to Rule 26(b)(1)'s Peer Review Privilege

¶9 We are asked to interpret the discovery privilege provided by Utah Rule of Civil Procedure 26(b)(1). "[W]hen construing a statute, we seek to give effect to the intent of the Legislature."[3] So we "begin with the plain language of the provision at issue in our broader effort to ascertain the intent of the Legislature disclosed by the language of the act as a whole, the act's operation, and its purpose."[4] "Only when we find ambiguity in the statute's plain

---

[1] *Moler v. CW Mgmt. Corp.*, 2008 UT 46, ¶ 7, 190 P.3d 1250 (quoting *Price v. Armour*, 949 P.2d 1251, 1254 (Utah 1997)).

[2] *Aequitas Enters., LLC v. Interstate Inv. Grp., LLC*, 2011 UT 82, ¶ 7, 267 P.3d 923.

[3] *State v. Rasabout*, 2015 UT 72, ¶ 10, 356 P.3d 1258.

[4] *Id.*

language need we seek guidance from the legislative history and relevant policy considerations."[5]

¶10  In this case, nothing in the text of rule 26(b)(1) indicates the existence of a bad faith exception. The rule states, in relevant part:

> Privileged matters that are not discoverable or admissible in any proceeding of any kind or character include all information in any form provided during and created specifically as part of a request for an investigation, the investigation, findings, or conclusions of peer review, care review, or quality assurance processes of any organization of health care providers as defined in the Utah Health Care Malpractice Act for the purpose of evaluating care provided to reduce morbidity and mortality or to improve the quality of medical care, or for the purpose of peer review of the ethics, competence, or professional conduct of any health care provider.[6]

The text of rule 26(b)(1) does not mention a bad faith exception. The rule prohibits discovery of privileged matters "in *any* proceeding of *any* kind" and includes "*all* information in *any* form" provided at *any* stage of a peer review, care review, or quality assurance process.[7] This language is certainly broad enough to prohibit even the discovery of statements made in bad faith as part of a peer review meeting.[8]

---

[5] *World Peace Movement of Am. v. Newspaper Agency Corp., Inc.*, 879 P.2d 253, 259 (Utah 1994).

[6] UTAH R. CIV. P. 26(b)(1).

[7] *Id.* (emphases added).

[8] The discovery privilege set out in rule 26(b)(1) applies to both the care review and the peer review process. The care review privilege "authorizes, without the risk of liability, certain private medical information to be provided to select entities" for two purposes: "(a) study[ing] and advancing medical research, with the purpose of reducing the incidence of disease, morbidity, or mortality; or (b) the evaluation and improvement of hospital and health care rendered by hospitals, health facilities, or health care providers." *Vered v. Tooele Hosp. Corp.*, 2018 UT App 15, ¶ 18, 414 P.3d 1004 (quoting UTAH CODE § 26-25-1(3)); *see also Benson v. I.H.C.*

(Continued)

¶11 The language does reference the definitions in the Utah Health Care Malpractice Act, but nothing in that act can be read to create a bad faith exception to rule 26(b)(1).[9] So under the plain meaning of the text of rule 26(b)(1), there is no bad faith exception to the discovery privilege at issue here.

## II. The Legislative Note Appended to Rule 26(b)(1) Does Not Create a Bad Faith Exception

¶12  Even though nothing in the text of rule 26(b)(1) indicates the existence of a bad faith exception, Dr. Belnap argues that the term "privilege" becomes ambiguous when the legislative note is read as part of the rule, and that the best reading of the note is that it creates a bad faith exception to the privilege rule. Because we conclude that the plain meaning of the text of rule 26(b)(1) is unambiguous, it is questionable whether it is proper to consider the note as part of our analysis. But because our consideration of the note does not change our result, we examine it briefly here.

### A. It is questionable whether we should consider the legislative note as part of the text of rule 26(b)(1)

¶13 While "it is sometimes appropriate to consider legislative history when interpreting statutes, we will not do so when a statute is, as here, unambiguous."[10] In other words, when the language of a rule or statute is clear, we do not look to other sources, such as legislative history, for interpretive guidance.[11] Instead, only when we find ambiguity do we turn to additional tools to help us understand the rule.[12]

---

*Hosps., Inc.*, 866 P.2d 537, 539 (Utah 1993). On the other hand, the peer review privilege "protects reviews undertaken 'for the purpose of evaluating any health care provider regarding (a) professional ethics, (b) medical competence, (c) moral turpitude, or (d) substance abuse.'" *Vered*, 2018 UT App 15, ¶ 19 (citation omitted). Because the alleged defamatory statements here occurred during a peer review process, much of our opinion focuses on the peer review process.

[9] *See* UTAH CODE §§ 78B-3-401 to -426.

[10] *Allred v. Saunders*, 2014 UT 43, ¶ 18, 342 P.3d 204 (interpreting rule 26 and referencing the accompanying legislative note).

[11] *State v. Barrett*, 2005 UT 88, ¶ 29, 127 P.3d 682.

[12] *Id.*

¶14 In this case, the legislative note to which Dr. Belnap refers was enacted together with the rest of the rule amendment.[13] So, unlike most legislative history, the note is not merely an interpretive statement added after the passing of the bill. Because the legislature enacted the note along with the rule, we could view it as part of the statute, similar to a preamble. And we have held that although preambles are "not a substantive part of the statute," they may provide guidance "as to how the act should be enforced and interpreted" and "may be used to clarify ambiguities."[14]

¶15 We have, however, previously interpreted the note at issue in this case to be nothing more than legislative history.[15] In our 2014 *Allred v. Saunders* case, we referenced the note accompanying rule 26 and stated that "in no event will we look to unenacted legislative statements that contradict the plain text of the enactment."[16] So alternatively, we could treat the note more like an advisory committee note. But we generally do not look to advisory committee notes or other sources of interpretive guidance "when the language of the statute is plain."[17] Because the language of rule 26(b)(1) is plain, if we consider the note to be the equivalent of an advisory committee note, it would be improper to consider it.

¶16 But we need not determine whether we should treat the note at issue in this case as something akin to a preamble or an advisory committee note, because we reach the same result regardless of how we treat it.

---

[13] S.J.R. 15, 59th Leg., Gen. Sess. (Utah 2012).

[14] *Price Dev. Co., L.P. v. Orem City*, 2000 UT 26, ¶ 23, 995 P.2d 1237.

[15] *Allred*, 2014 UT 43, ¶ 18. Our statement in this case about the nature of the note may be more a factual observation than a statement of law, so the precedential effect is unclear. But we need not reach this question, because even if we assign the note the same weight as the statutory language, the result is the same. *See infra* section II.B.

[16] *Id.*

[17] *Barrett*, 2005 UT 88, ¶ 29.

*B. Even were we to assign the legislative note the same weight
as the statutory language, we would still
find no bad faith exception*

¶17 The legislative note at issue in this case states that rule 26(b)(1) "intended to incorporate long-standing protections against discovery and admission into evidence of privileged matters connected to medical care review and peer review into the Utah Rules of Civil Procedure."[18] It then states that these "privileges" are found in "both Utah common law and statute" and "include Sections 26-25-3, 58-13-4, and 58-13-5" of the Utah Code.[19] Dr. Belnap

---

[18] UTAH R. CIV. P. 26, legislative note 1 to 2012 amendment. The note in its entirety reads:

> The amended language in paragraph (b)(1) is intended to incorporate long-standing protections against discovery and admission into evidence of privileged matters connected to medical care review and peer review into the Utah Rules of Civil Procedure. These privileges, found in both Utah common law and statute, include Sections 26-25-3, 58-13-4, and 58-13-5, UCA, 1953. The language is intended to ensure the confidentiality of peer review, care review, and quality assurance processes and to ensure that the privilege is limited only to documents and information created specifically as part of the processes. It does not extend to knowledge gained or documents created outside or independent of the processes. The language is not intended to limit the court's existing ability, if it chooses, to review contested documents in camera in order to determine whether the documents fall within the privilege. The language is not intended to alter any existing law, rule, or regulation relating to the confidentiality, admissibility, or disclosure of proceedings before the Utah Division of Occupational and Professional Licensing. The Legislature intends that these privileges apply to all pending and future proceedings governed by court rules, including administrative proceedings regarding licensing and reimbursement.

[19] *Id.*

argues that the incorporation of these statutory provisions creates a bad faith exception. We disagree.

¶18 Section 26-25-3, in conjunction with section 26-25-1, provides both a discovery and an evidentiary privilege for information and statements made as part of care and peer review processes. As we later discuss, this section was held inoperative by one of our district courts, and was later incorporated into rule 26(b)(1).[20] Significantly, this rule does not include a bad faith exception.

¶19 In contrast to the *discovery and evidentiary* privileges in section 26-25-3, sections 58-13-4 and 58-13-5 create an *immunity from liability* in certain circumstances. Section 58-13-4 provides that individuals participating in a care review process are immune from liability arising from that process, as long as they participate in good faith. Section 58-13-5 similarly states that individuals participating in a peer review process are immune from liability arising from that process, as long as they participate in good faith.

¶20 Dr. Belnap argues that reading section 26-25-3 together with sections 58-13-4 and 58-13-5 suggests that a bad faith exception should be incorporated into section 26-25-3, and by extension, rule 26(b)(1). But our review of the history behind the statutes referenced in the note leads us to conclude that none of the statutory provisions Dr. Belnap cites injects a bad faith exception into rule 26(b)(1).

¶21 The legislature enacted the first iteration of Utah Code section 58-13-4 in 1969.[21] This section provided then and provides now immunity for health care professionals participating in the care review process, as long as they do so in good faith.[22] In 1996, the legislature added a provision similar to section 58-13-4, section 58-13-5, which provides for the same qualified immunity in the peer review process.[23]

---

[20] *Jones v. Univ. of Utah Health Sci. Ctr.*, No. 100419242, 2012 WL 602613 (Utah Dist. Ct. Jan. 13, 2012).

[21] 1969 Utah Laws 669. When first enacted, section 58-13-4 was listed as section 58-12-25.

[22] UTAH CODE § 58-13-4.

[23] 1996 Utah Laws 1292. When first enacted, section 58-13-5 was listed as section 58-12-25.5.

¶22 In 1981, the legislature enacted what are now Utah Code sections 26-25-1 and 26-25-3.[24] The legislature amended section 26-25-3 in 1994 to include a protection against discovery.[25] Prior to that, the section had provided only an evidentiary protection.[26] These sections now operate together to "protect information compiled or created during the peer-review . . . process from both discovery and receipt into evidence."[27]

¶23 In 2012, one of our district courts "held that the Legislature's 1994 amendment to section 26-25-3 was inoperative" because it had failed to go through the proper process for amending a rule of evidence.[28] After this ruling, the Utah legislature properly amended Rule 26 of the Utah Rules of Civil Procedure to codify these peer and care review privileges.[29] As part of the 2012 amendment, the legislature included a legislative note with the enacted bill.[30]

¶24 Importantly, nothing in the legislative note mentions a bad faith exception. But the note does reference Utah Code sections 26-25-3, 58-13-4, and 58-13-5 as the sources of the peer and care review privileges.[31] Rule 26(b)(1) and Utah Code section 26-25-3 both deal with the protections against *discovery*. And neither provision mentions a bad faith exception.

¶25 But Utah Code sections 58-13-4 and 58-13-5, on the other hand, both provide that individuals participating in the care and peer review processes have qualified immunity from *liability*. Such individuals are shielded from liability only when they participate in these processes in good faith.[32]

---

[24] 1981 Utah Laws 731–32.

[25] *See Jones*, 2012 WL 602613.

[26] *Id.*

[27] *Allred*, 2014 UT 43, ¶ 9.

[28] *Id.* ¶ 11 (citing *Jones*, 2012 WL 602613).

[29] *Id.* ¶ 12.

[30] S.J.R. 15, 59th Leg., Gen. Sess. (Utah 2012).

[31] UTAH R. CIV. P. 26 legislative note 1 to 2012 amendment.

[32] UTAH CODE §§ 58-13-4, -5.

¶26 In other words, the immunity from liability set forth in sections 58-13-4 and 58-13-5 is subject to a bad faith exception while the discovery privilege in rule 26(b)(1) and section 26-25-3 is not. And it is the discovery privilege that is at issue in the case before us.

¶27 Dr. Belnap notes, however, that Utah Code section 58-13-4's initial enactment predated the initial enactment of sections 26-25-1 and 26-25-3, and there was a good faith requirement in section 58-13-4 from that initial enactment. Based on this chronology, he argues that sections 26-25-1 and 26-25-3 incorporate the good faith requirement from previously enacted section 58-13-4. We do presume that "whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter."[33] But we also seek "to give effect to omissions in statutory language by presuming all omissions to be purposeful."[34] Based on this canon, and given that section 58-13-4 did predate the other sections and did include good faith language, we may presume that the legislature intentionally omitted that language in sections 26-25-1 and 26-25-3, and rule 26. And the fact that section 58-13-4 also predated section 58-13-5, but the legislature *did* include the good faith requirement when it later enacted section 58-13-5, supports this interpretation. So it is clear that the legislature did not intend to simply rely on section 58-13-4 to provide a good faith requirement for all subsequent enactments.

¶28 The legislative note makes clear that the legislature's intention in amending rule 26 was to maintain the status quo in codifying the peer and care review privileges as they existed prior to the district court decision overruling the 1994 amendment to Utah Code section 26-25-3.[35] Throughout the entire history of these statutory provisions, there has never been a bad faith exception to the discovery or evidentiary provisions. Further, the only sections that have ever included good faith language are those relating to immunity — sections 58-13-4 and 58-13-5. And the note itself does not have a bad faith exception. The amendment was "intended to incorporate long-standing protections against discovery and

---

[33] *Murray City v. Hall*, 663 P.2d 1314, 1318 (Utah 1983).

[34] *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863.

[35] *See* UTAH R. CIV. P. 26 legislative note 1 to 2012 amendment; *see also Jones*, 2012 WL 602613.

admission into evidence of privileged matters," making clear that it was not meant to alter existing rules regarding discovery.[36] So even if we read the legislative note along with the text of the rule, we find no bad faith exception to the discovery provision.

¶29 We hold that, although there is a bad faith exception to immunity from liability, there is no such exception to the discovery privilege. Admittedly, as Dr. Belnap argues, there is significant tension resulting from the interplay of these two conclusions. Together, they allow for the potential imposition of liability, but significantly foreclose the pursuit of discovery to prove that liability. Other courts in jurisdictions with a similar statutory framework have noted this tension and offered reasons why their respective legislatures may have treated immunity differently than document production.[37] But whatever reasons our legislature may have had for

---

[36] UTAH R. CIV. P. 26 legislative note 1 to 2012 amendment.

[37] *See, e.g.*, *Marshall v. Planz*, 145 F. Supp. 2d 1258, 1271 (M.D. Ala. 2001) (declining to apply a good faith limitation to the peer review privilege so the "privilege from testifying was not qualified, but immunity from suit was" qualified); *Franco v. Dist. Ct. of Denver*, 641 P.2d 922, 930 (Colo. 1982) ("We believe the legislature deliberately omitted any good faith limitation in the peer review privilege in order to avoid any chilling effect on the review committee's statutory duty . . . ."); *Patton v. St. Francis Hosp.*, 539 S.E.2d 526, 529 (Ga. Ct. App. 2000) ("Since neither the peer review nor medical review statutes pertaining to the discovery privilege mention malice, it is doubtful that the legislature intended to expand the malice exception to the Code sections affording a discovery privilege to peer review proceedings."); *Terre Haute Reg'l Hosp., Inc. v. Basden*, 524 N.E.2d 1306, 1310 (Ind. Ct. App. 1988) ("Therefore, the information that [the hospital] refused to disclose based upon the confidentiality and privilege protection afforded in the Peer Review Statute was not subject to disclosure due to lack of good faith on the part of the peer review committee or the participants to the investigation."); *Roy v. City of Harriman*, 279 S.W.3d 296, 301 (Tenn. Ct. App. 2008) (rejecting an argument that conditional immunity created an implied exception to the discovery privilege); *Irving Healthcare Sys. v. Brooks*, 927 S.W.2d 12, 17 (Tex. 1996) ("[T]he statute reflects the Legislature's conscious decision to allow an affected physician to bring claims against those who participate in the peer review process maliciously and without
(Continued)

its peer review regime, it is clear that the tension we have described predates the amendment to rule 26. This is significant because it shows that the legislature has had ample opportunity to resolve it. Indeed, throughout the history of amendments to the various peer and care review statutes, this distinction has always existed. The amendments to the rule merely carried forward this existing tension.

**Conclusion**

¶30 The plain language of rule 26(b)(1) includes no bad faith exception to the application of the peer review discovery privilege. And even looking to the legislative history, we still find no bad faith exception. Accordingly, we affirm.

––––––––––––

good faith, but nevertheless to maintain the confidentiality of the peer review process.").